COMMONWEALTH *vs.* JAMES F. WALLACE
(and a companion case against the same defendant).

Suffolk.    October 2, 1950. — November 2, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Robbery. Larceny. Evidence,* Relevancy and materiality.

At the trial of two indictments charging the defendant with armed robbery and with larceny of an automobile, there properly were admitted in evidence in the circumstances a pair of pigskin gloves, a "wire jumper" (a contrivance designed to start an automobile when the ignition is locked), and a soft, gray hat, all dropped by the defendant just before he was arrested at the end of a flight from a police officer from a position beside the stolen automobile, which had been used in escaping from the scene of the robbery.

Evidence at a criminal trial of the circumstances of the use of a recently stolen automobile in the escape of a robber from the scene of the robbery, of the defendant's presence beside the automobile when it stopped a short time later while being pursued by a police officer, of the defendant's running away from the officer despite warning shots, and of the defendant's dropping various articles, some of which had been used by the robber, during such flight, together with evidence of certain statements made by the defendant and his testimony at the trial, warranted a finding that the defendant was the operator of the automobile in the escape from the scene of the robbery and justified his conviction on charges of robbery and of larceny of the automobile.

INDICTMENTS, found and returned on September 19, 1949.

The cases were tried in the Superior Court before *Goldberg,* J.

*R. R. Clark,* (*F. Juggins* with him,) for the defendant.

*J. F. McAuliffe,* Assistant District Attorney, for the Commonwealth.

RONAN, J.    The defendant was tried and convicted upon an indictment charging him and one Kelly with armed robbery, and upon another indictment charging him with the larceny of an automobile.    The only assignments of error argued by him are to the admission of certain articles

in evidence and to the denial of his motions for directed verdicts of not guilty.

The jury could find the following facts. One Miller, the paymaster of a plumbing concern engaged in a construction job on Camden Street in Roxbury, was held up and robbed at about nine o'clock on the morning of August 23, 1949, as he neared the office of his employer at the site of the work, by Kelly who "stuck" a revolver into Miller's back and threatened to shoot him if he did not turn over the payroll to him. Kelly wore a light colored zipper jacket, a summer cotton hat, and dark glasses. After the robbery, Kelly escaped in a waiting blue Chrysler automobile driven by another man and bearing a rear number plate which was tied on over the regular number plate. The driver of the automobile had difficulty in starting it. This automobile was stolen during the preceding evening, and the rear number plate had been stolen earlier on the morning of August 23, 1949. The police were immediately notified by Miller of the robbery. One Waldron, a police officer, driving a blue and gray police cruising automobile, saw the Chrysler automobile travelling through Roxbury Crossing about five minutes after the robbery. Two men were then in the automobile. The driver wore a gray felt hat. Waldron noticed the rear number plate and pursued the Chrysler automobile which was not always in his sight as he followed it, due to traffic and curves and slopes in the road. As Waldron continued he saw the Chrysler automobile turn along the rotary at Heath Square and into Parker Street. As Waldron made the turn into Parker Street, the Chrysler was pulling into the curb a short distance ahead of him. He stopped when he got opposite the Chrysler. No one other than Waldron and Wallace was in the vicinity. He was standing on the sidewalk alongside of the Chrysler automobile. Waldron stepped out of the police automobile with his revolver in hand. Wallace ran behind the Chrysler and the cruising automobile, across Parker Street, and over a vacant lot to Heath Street, where he stumbled, dropping a light colored zipper jacket containing dark glasses. Despite a warning

shot from the officer, he crossed a lot adjoining Heath Street, and got over a fence six feet in height and into the rear of the premises at 62 New Heath Street. He paid no heed to a second warning shot but continued through the side yard of the lot at 62 New Heath Street. Waldron was ten to twenty feet behind Wallace as the latter turned the corner of the house and ran into the front yard of this lot where Wallace finally halted. Waldron ordered him to walk to the sidewalk where he was placed under arrest. Shortly after Wallace's arrest a pair of pigskin gloves, a wire jumper, and a soft gray hat were found in this front yard. This yard extended a little beyond both sides of the front of the house and was only a few feet wide. It was separated by a picket fence from the street line.

The first assignments of error are to the admission of the three articles found in the front yard. The operator of the escape automobile wore a soft felt hat similar to the one found in the yard. The jury might think it unusual for the operator of an automobile to wear leather gloves on an August morning unless for the purpose of avoiding finger prints on the automobile. An examination of the automobile almost immediately after Wallace's arrest revealed only one finger print on the rear vision mirror. The identity of the person making this was unknown. At the time the Chrysler automobile was stolen and at the time it stopped on Parker Street the ignition was locked. The operator had difficulty in starting it immediately after the robbery. The wire jumper was a three-wire contrivance designed to start an automobile when the ignition is locked. All these articles were found at the scene of the defendant's arrest. He had a motive to get rid of them. Such articles would not ordinarily be thrown away by a householder. Nor is it to be easily assumed that such a combination of articles would be placed there by a passerby. They would not remain in such a place without soon being discovered. The jury could properly infer that Wallace did not wish to end his flight until he was able to dispose of them, and that he did so immediately before his arrest. The jury could prop-

erly infer that these articles had been possessed by Wallace until they were dropped by him. There was no error in admitting them in evidence. *Commonwealth* v. *Gangi,* 243 Mass. 341, 344. *Commonwealth* v. *Sacco,* 255 Mass. 369, 431. *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 470. *Commonwealth* v. *Noxon,* 319 Mass. 495, 539. *Commonwealth* v. *O'Toole, ante,* 35, 39.

There was no direct evidence as to the identity of the operator of the automobile in which the robbers escaped. The jury, however, had the right and duty to draw such inferences as were reasonable and warranted by the established facts; and if they induced in the minds of the jury a belief and conviction that the offences charged had been proved to a moral certainty,[1] then the jury could and should come to the conclusion that the defendant was guilty. *Commonwealth* v. *Alba,* 271 Mass. 333, 337. *Commonwealth* v. *Barker,* 311 Mass. 82, 90–91. *Commonwealth* v. *Grieco,* 323 Mass. 639, 642. The presence of Wallace near the Chrysler automobile almost immediately after it stopped on Parker Street, the absence of anyone else near this automobile, the flight of Wallace upon discovering the police automobile, his continued flight despite the warning shots of the police officer, his efforts to get rid of the jacket and dark glasses, which could have been found to have been used by Kelly at the time of the robbery, and of the soft felt hat, gloves, and wire jumper, his submission to arrest after he had disposed of all of these articles, his statement to the police that he came to Parker Street on foot, and his testimony at the trial that he came there in his own automobile warranted the jury in finding that he was the driver of the Chrysler automobile when it stopped on Parker Street. There was no dispute that this automobile had been used by the robbers to effect their escape and that it had been recently stolen. If the jury came to the conclusion that Wallace was

---

[1] The judge charged the jury that "The burden of proof is on the Commonwealth to prove the defendant is guilty of the offence with which he is charged beyond a reasonable doubt" and made an elaborate statement as to what is meant by "beyond a reasonable doubt," in the course of which he said "It means proof to a moral certainty." — REPORTER.

the operator of this automobile, they were warranted in finding that Wallace participated with Kelly in the armed robbery and also that he had stolen the Chrysler automobile. There was no error in refusing to direct verdicts of not guilty. *Commonwealth* v. *McGorty*, 114 Mass. 299, 302. *Commonwealth* v. *Brigham*, 147 Mass. 414. *Commonwealth* v. *Ryan*, 154 Mass. 422. *Commonwealth* v. *O'Hare*, 254 Mass. 564, 565. *Commonwealth* v. *Devereaux*, 256 Mass. 387, 395–396. *Commonwealth* v. *Torrealba*, 316 Mass. 24, 29.

*Judgments affirmed.*