COMMONWEALTH *vs.* ROBERT P. PINA.

Bristol.    September 13, 1971. — October 1, 1971.

Present: TAURO, C.J., CUTTER, REARDON, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* Ordering verdict. *Robbery.*

At a joint trial of indictments for armed robbery against a defendent
and two codefendants, where testimony identifying the two
codefendants as committing the robbery was limited by the judge
as not applying to the defendant "until such time as" he should be
"identified," and testimony identifying a gun carried by one of the
two codefendants was admitted in evidence only against them "at
this stage," but the defendant's motions for a directed verdict at
the close of the Commonwealth's case and at the close of all the
evidence, and the instructions in the charge, were based on the
assumption that the limitations on the testimony were no longer in
effect, alleged error on the part of the judge in failing to have
explicitly removed the limitations was not misleading or prejudi-
cial to the substantial rights of the defendant in the circums-
tances, and there was no merit in a contention by the defendant
that his motions must be determined on the basis of the
limitations. [141-142]

A conclusion that a defendant acted in concert with two codefendants
who had entered a hotel and committed a robbery at gunpoint was
warranted by evidence that shortly before the crime the defendant
had associated with the codefendants and had borrowed a car, that
a like car was seen with a male occupant outside the hotel about
the time of the robbery, that a little over an hour later the
defendant was driving the car with the codefendants in it, that a
gun which the defendant admitted owning and was used in the
robbery was found in the front seat of the car, that the defendant
gave a false alibi for all three of its occupants, and that together
they possessed a sum of money comparable to the amount stolen.
[143]

INDICTMENT found and returned in the Superior Court
on June 5, 1969.

The case was tried before *DeSaulnier*, J.

*Robert V. Greco (Reuben Goodman* with him) for the de-
fendant.

*Kenneth L. Sullivan,* Assistant District Attorney *(Philip A.*

*Rollins,* District Attorney, with him) for the Commonwealth.

BRAUCHER, J. This is an appeal under G. L. c. 278, §§ 33A–33G, from a conviction on an indictment charging the defendant with armed robbery. The defendant was tried with two codefendants, Louis Pina and William Saucier. His argument relates solely to the denial of his two motions for a directed verdict, one at the close of the Commonwealth's case and the other at the close of all the evidence.

We summarize the evidence. The desk clerk at the New Bedford Hotel testified that he was on duty at 12:45 A.M. on March 11, 1969, when the two codefendants entered the hotel lobby. Counsel for the defendant asked that the testimony of the desk clerk not be applied to the defendant, and the judge said, "Until such time as he is identified or brought into the picture as either a principal — I will so rule. All the evidence is only as against the two that he has identified."

The desk clerk then testified that the two men committed a robbery at gunpoint, taking $274 or $279. He identified a gun carried by the codefendant Saucier, and it was admitted in evidence only against the codefendants "at this stage." The desk clerk also testified to his subsequent identification of the codefendants. Counsel for the defendant renewed his objection that "none of this evidence applies to the defendant Robert Pina," and the judge responded, "I am sure it doesn't . . . ." The switchboard operator then testified to some of the same events.

The defendant and the two codefendants had been in the Hide-Away Cafe some time before 11 P.M. on March 10, 1969. About 11 P.M. the defendant borrowed his sister-in-law's car, a white, four-door 1964 Chevrolet. The three men were in the North Cafe sometime before 1 A.M. The two cafes are near the New Bedford Hotel. About 12:40 A.M. a police officer saw a "1963 or '64" white Chevrolet sedan parked in front of the hotel, with a male occupant in the rear passenger's seat. At 2:03 A.M. the defendant was driving a 1964 white Chevrolet sedan at an intersection in

New Bedford, and the two codefendants were with him. A police officer in a cruiser followed and finally stopped the Chevrolet, other cruisers arrived at the scene, and the three men were arrested and taken to a police station.

A police officer testified that in the police station the defendant said that he and the two codefendants had been in the Hide-Away Cafe and then in the North Cafe until closing time (about 12:45 A.M.). The gun previously admitted in evidence against the codefendants was taken from the front seat of the Chevrolet, and the defendant said that it was his and that he used it "for shooting off caps." Counsel for both codefendants objected to this testimony, but it was admitted against all three defendants. Shortly thereafter, counsel for one of the codefendants moved to strike the testimony, and the judge said, "I will instruct the jury that conversation with the prospective witness only applies to him, not to anyone else; and as to what statement was made by each individual defendant as they were interrogated."

At the police station the three men were searched and $337 was recovered, $112 from the defendant, $69 from one codefendant, and $156 from the other.

1. The judge never formally removed the limitations on evidence referred to above. The defendant now argues that the motions for a directed verdict must be determined on the basis of the limitations in effect when the motions were argued and decided. *Commonwealth* v. *Kurth,* 359 Mass. 729, 736. Since the evidence that a crime was committed, the identifications of the codefendants, and particularly the gun, were never formally admitted in evidence against the defendant, he contends that it was error to deny his motions for a directed verdict.

The limitations in question were made provisionally, first "[u]ntil such time as" the defendant "is identified," then "at this stage." If there was sufficient subsequent evidence to make the prior evidence admissible against the defendant, an explicit ruling to that effect should have been made before a motion for a directed verdict was argued. But where

"motions for directed verdicts were argued in contemplation of such ruling as the judge might thereafter make in respect of removing the limitations on evidence," and the limitations were subsequently removed in the charge to the jury, we held that there was no error in denying the motions. *Commonwealth* v. *Dougherty*, 343 Mass. 299, 303. We think the same principle applies where the transcript shows that the motions were argued and the jury instructed on the assumption that the limitation was no longer in effect.

In this case counsel for the defendant, arguing his motion for a directed verdict at the close of the case for the Commonwealth, said "we are called upon to assume, without deciding, that all questions be resolved in favor of the Commonwealth." He made no reference to limitations placed on the evidence. His argument assumed that there was evidence of an "armed holdup." He argued on the basis of *Commonwealth* v. *Fancy*, 349 Mass. 196, 200, that "possibly" the defendant, "on the best evidence the Commonwealth has, is an accessory either before or after; but we don't have any evidence that puts him in this armed holdup."

The judge in his charge, to which no exception was taken, plainly made the same assumption. He first instructed the jury with respect to the two codefendants. Then, with respect to the defendant, he explained the need for a finding "that he was acting in concert with the other two in order to effectuate the principal end, namely, the taking away of the property by force and violence." He added that, if the jury disbelieved the identification of the two codefendants, "I don't see how you could find the other individual, Robert Pina, guilty of the crime."

In these circumstances, we do not believe that either the defendant or his counsel or the jury could have been misled by the judge's failure to make explicit his removal of the provisional limitations on evidence. To accept the defendant's argument now would be to reverse on an error not affecting substantial rights and not called to the attention of the judge, an afterthought of appellate counsel.

2. The question remains whether the evidence, largely circumstantial, was sufficient to warrant the jury in inferring that the defendant was acting in concert with the two codefendants. In cases bearing some similarity to this one we have refused to allow a finding of guilt by association. *Commonwealth* v. *Fancy*, 349 Mass. 196, 200. *Commonwealth* v. *Perry*, 357 Mass. 149, 151. Those cases held that association with thieves before and after the theft, in the circumstances there set forth, was not enough to convict the defendants.

In the present case, however, there is much more. The defendant associates with the robbers before the theft, he borrows a car, a like car is seen with a male occupant outside the robbed establishment about the time of the robbery, a little over an hour later he is driving the car with the robbers in it, the gun used in the robbery is found on the front seat of the car, he admits owning the gun and gives a false alibi for all three, and they are found to possess a sum of money comparable to the amount stolen. We think the jury could properly infer that he was acting in concert with the two codefendants in order to effect the armed robbery. Compare *Commonwealth* v. *Wallace*, 326 Mass. 393, 396–397; *Commonwealth* v. *Conroy*, 333 Mass. 751, 754–755; *Commonwealth* v. *Medeiros*, 354 Mass. 193; *Commonwealth* v. *Breen,* 357 Mass. 441.

*Judgment affirmed.*