## COMMONWEALTH vs. ANTONIO MANGULA.

Middlesex.    May 20, 1974. — January 17, 1975.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Robbery. Joint Enterprise.*

At a criminal trial evidence of the circumstances in which the defend-
ant with certain others planned to rob an apartment, sat in a car
while the others committed the robbery, and then received a rifle
used during the robbery and stolen items, warranted the defend-
ant's conviction of armed robbery. [786-794]

INDICTMENT found and returned in the Superior Court
on June 18, 1971.

The case was tried before *Collins, J.*

*John F. Palmer* for the defendant.

*Bonnie H. MacLeod-Griffin*, Assistant District Attor-
ney, for the Commonwealth.

ROSE, J.    This is an appeal under G. L. c. 278,
§§ 33A-33G, from a conviction of armed robbery.[1] A
single issue is raised by the defendant in his brief and
argument: that he was entitled to a directed verdict
because there was no evidence that he was engaged in a
joint enterprise to commit armed robbery. By virtue of
Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889
(1972), assignments of error not argued in the defendant's
brief are deemed waived, and thus the refusal to grant
the defendant's motion for a directed verdict is the sole
question for consideration.

---

[1] The defendant was found not guilty on a murder indictment, and
the court directed verdicts for the defendant on two other indict-
ments.

The only question, in turn, raised by a motion for a directed verdict is "whether there was sufficient evidence of the defendant's guilt to warrant the submission of the [case] . . . to a jury," *Commonwealth* v. *Fillippini,* 1 Mass. App. Ct. 606, 612 (1973); *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969), and the appropriate standard of review on appeal is whether the evidence, read in its aspect most favorable to the Commonwealth, *Commonwealth* v. *Flynn,* 362 Mass. 455, 478-479 (1972), is such that the jury "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445 (1933).

One of two principal witnesses for the Commonwealth was Judy Varoski, who described the circumstances of the robbery in which the defendant was allegedly involved. Varoski testified that, on April 21, 1971, while visiting Peter Kyriazopoulos (the eventual victim) at his apartment in Lowell, she was shown five $1,000 bills belonging to Kyriazopoulos.

The next morning, Varoski received a telephone call from one Luis Alvarez, who told her that he needed money for a friend named Luis Perez. As a result of this conversation, Alvarez, accompanied by Perez and his friend "Tony" Mangula, the defendant on this appeal, joined together with Varoski and proceeded to downtown Lowell in Perez's car in order to find Kyriazopoulos at the place where he worked.

During the ride to Lowell, Perez asked Varoski if she was sure there was money at Kyriazopoulos' apartment. Unable to find Kyriazopoulos, they drove to his apartment. Varoski took Alvarez into the apartment building to show him in which apartment Kyriazopoulos lived.

When they returned, Varoski noticed the defendant and Perez standing together beside the car. She observed that Perez had a rifle in his possession. Perez said he wanted to shoot the locks off the window of Kyriazopoulos' apartment. The defendant then offered to break the window in order to gain access to the apartment and to secure the money. This plan was opposed by Varoski and Alvarez, and no further action was taken at that time. The four of them got back into the car and continued their search for Kyriazopoulos.

In the car, another conversation ensued in which Varoski said she would get Kyriazopoulos out of his apartment by 5:00 P.M. that afternoon and told the others that she had given Perez Kyriazopoulos' telephone number to call to make sure he was not at home. They were then to break into the apartment.

During the course of that afternoon and evening, Varoski made continuous telephone calls to Kyriazopoulos' apartment but was unable to reach him. She did not, however, call Perez to tell him she was unable to contact Kyriazopoulos.

Alvarez also testified concerning the events leading up to the crime and the crime itself. After talking with Varoski on the morning of April 22, Alvarez went to see Perez and the defendant. In the presence of the defendant, Alvarez told Perez about the money at Kyriazopoulos' apartment and that Varoski knew where it was.

At the trial Alvarez essentially corroborated Varoski's testimony concerning the conversations in Perez's car and outside the car at Kyriazopoulos' apartment.

In the afternoon, Alvarez and the defendant entered a car which Perez was driving. Alvarez sat in the front seat and the defendant in the back seat. Alvarez noticed a rifle behind the defendant's head in the back seat.

At about 4:30 P.M. they parked at Kyriazopoulos' apartment building. Alvarez and Perez then got out of

the car and proceeded to the apartment building, but the defendant remained in the car. Perez went straight to the building door and opened it. Alvarez went past him into the building. Alvarez testified he did not see Perez with the rifle at that point. When Perez later rushed by Alvarez into the apartment "he had a gun with him." Alvarez recounted the circumstances of the robbery and the shooting of Kyriazopoulos by Perez.

Alvarez testified that when he ran from the apartment building the defendant was sitting in the back seat of the car on the driver's side with the door open. Upon reaching the car, Alvarez threw a bank book containing $1,000 bills at the defendant and told him that the money was "fake" and that Perez had shot Kyriazopoulos. Perez returned four or five minutes later and gave the rifle to the defendant, who replaced it on the back window shelf. The defendant also received items taken from the apartment by Perez.

Lillian Oates, a girlfriend of the defendant, testified that "some time later" the defendant told her that he was inside the car and not in Kyriazopoulos' apartment at the time of the robbery. Oates also testified that on the day after the crime she and the defendant accompanied Luis Perez to New Hampshire and then to New York.

The defendant, although charged as a principal, was in theory being charged as an accomplice or principal in the second degree.[2] The Commonwealth has proceeded on

---

[2] In order to convict as a principal in the second degree "[i]t must be proved, that he was in . . . a situation [in which he might render assistance] by agreement with the perpetrator of the crime, or with his previous knowledge, consenting to the crime, and for the purpose of rendering aid and encouragement in the commission of it." *Commonwealth* v. *Knapp*, 9 Pick. 495, 517 (1830). To be in a position where one might have given aid is sufficient. *Ibid.* See also *Commonwealth* v. *Connolly*, 356 Mass. 617, 629 (1970), cert. den. 400 U. S. 843 (1970); Perkins, Criminal Law, 657-663 (2d ed. 1969).

By virtue of G. L. c. 274, § 2, one who aids in the commission of a

the theory that the defendant was engaged in a joint enterprise and is therefore criminally liable for the armed robbery which occurred. The defendant concedes that there may have been a joint enterprise but argues that the very essence of the common design was to avoid confronting the eventual victim. He therefore argues that while the joint enterprise might have included a plan to break into the apartment and commit larceny, it did not extend to the commission of armed robbery.

The defendant points to the case of *Commonwealth* v. *Richards,* 363 Mass. 299, 307-308 (1973), which defines the requirements for criminal liability in a joint enterprise. "[G]uilt of the accessory is established when it is . . . shown that he intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." See also *Commonwealth* v. *Ferguson,* 365 Mass. 1 (1974). The *Richards* case specifically rejected in a non-capital indictment the application of the broad concept of complicity which operates in the area of felony-murder, and under which each joint venturer would be held responsible for any crime committed by any of his partners which follows naturally and probably from the carrying out of the enterprises. Outside the felony-murder area, each joint venturer must be shown to have the mens rea required for the specific crime with which he is charged. However, it is sufficient if an accomplice possesses conditional or contingent intent, i.e. a willingness to see some action occur should it become necessary to effectuate the plan. See *Richards* case, *supra,* at 306-308.[3]

---

felony is indicted, tried and punished as a principal. See *Commonwealth* v. *Benjamin,* 358 Mass. 672, 679-681 (1971).

[3] In the *Richards* case, the original scope of the joint enterprise was to commit armed robbery, but the defendant was charged with the additional crime of assault with intent to kill. The Supreme Judicial

Chapter 277, § 39, of the General Laws defines robbery as "[t]he taking and carrying away of personal property of another from his person and against his will, by force and violence, or by assault and putting in fear, with intent to steal."[4]   This definition substantially adopts the common law notion of robbery, which requires a specific intent to steal as an essential element of the mens rea of the crime. *People* v. *Morlock,* 46 Cal. 2d 141, 146 (1956).   See also *Jackson* v. *United States,* 348 F. 2d 772, 773 (D. C. Cir. 1965); *Richardson* v. *United States,* 403 F. 2d 574 (D. C. Cir. 1968); *Jones* v. *Commonwealth,* 172 Va. 615, 618-619 (1939); *People* v. *Sheasbey,* 82 Cal. App. 459, 462-463 (1927); Perkins, Criminal Law, 265-267, 279-281 (2d ed. 1969).

To constitute the crime of armed robbery, an additional mental element may be required.   One case decided by the Supreme Judicial Court "can be read as suggesting that for armed robbery it may be enough that the accomplice intends the robbery even though he does not advert to the presence of a dangerous weapon, the possession being seen as merely an aggravation of the robbery." *Commonwealth* v. *Ferguson,* 365 Mass. 1, 8 (1974), discussing *Commonwealth* v. *Nickologines,* 322 Mass. 274, 276-277 (1948).   However, for the purposes of this case, we assume the posture taken in *Commonwealth* v. *Ferguson, supra,* at 7-10, and require that to be found guilty of armed robbery the defendant must have had knowledge of the possession of the weapon by his joint venturers.

In this case, there was sufficient evidence for the jury to find that the defendant had at least a conditional intent to see the joint enterprise extend to armed robbery.

Court approved the instructions of the judge, requiring that the jury find a specific intent to kill.

[4]See *Commonwealth* v. *Novicki,* 324 Mass. 461, 464-465 (1949).

The jury as the trier of fact are free to draw inferences "unless the inference is either forbidden by some special rule of law, or is declared unwarranted because too remote, according to the ordinary course of events." *Commonwealth* v. *O'Brien,* 305 Mass. 393, 401 (1940). "It is not essential that the inferences drawn from facts or circumstances be necessary inferences." The inference must only be reasonable and possible. *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968), cert. den. sub nom. *Bernier* v. *Massachusetts,* 393 U. S. 1058 (1969).

The jury could have found that the defendant participated in an extended enterprise to break into and steal from Kyriazopoulos' apartment. The defendant had offered to break the window and enter the apartment earlier in the day. With the exception of the fact that he remained in the car during the actual robbery, the defendant physically participated with the principals throughout the venture. This evidence was sufficient to permit a finding that the defendant possessed the specific intent to steal required for the crime of armed robbery.

The jury could also have found that the joint venturers had deviated from the initial plan which sought to ensure that Kyriazopoulos would not be at his apartment. No phone call was made verifying his absence, and the three men arrived at the apartment one-half hour earlier than the plan called for.

In addition, the jury could have found that the defendant knew Perez had a rifle with him and that in the course of the crime Perez obtained the rifle from a position in the car directly behind the defendant's shoulder. There was evidence that the defendant was close-by when Perez held the rifle in open view on the earlier expedition to Kyriazopoulos' apartment. In the afternoon, when the three men joined together again, Perez's rifle was on the shelf under the back window of the car and Alvarez testified that he saw it. The defend-

ant was sitting in the back seat and the rifle, although covered by Perez's jacket with only the butt end showing, was directly behind the defendant's head. From the above evidence the jury could infer that the defendant knew the rifle was there. This evidence, when taken in conjunction with testimony that Perez first went to the apartment building without the rifle but then returned for it, was sufficient for the jury to infer that the defendant observed Perez's acquisition of the rifle from the back of the car.

Thus the jury could find that the defendant intended to participate in the commission of armed robbery, if that became necessary to carry out the enterprise.[5] Furthermore, there is no evidence of withdrawal from or abandonment of the criminal enterprise by the defendant.[6]

However, under a joint enterprise theory, a person must have both associated himself with the venture and "participated to some extent in the commission of that offense." *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972), citing *Commonwealth* v. *Stasiun*, 349 Mass. 38, 49 (1965). "If the defendant agreed with the other

---

[5] See *Commonwealth* v. *Richards*, 363 Mass. 299, 308 (1973).

[6] A withdrawal or abandonment to be effective must, at the least, be communicated to one's joint venturers and communicated at such time as will give the others a reasonable opportunity to withdraw. See *Commonwealth* v. *Green*, 302 Mass. 547, 555 (1939); *Commonwealth* v. *Lussier*, 333 Mass. 83, 90-91 (1955); *Pollack* v. *State*, 215 Wis. 200 (1934), overruled on other grounds, *State ex rel. Goodchild* v. *Burke*, 27 Wis. 2d 244, 262 (1965); *People* v. *Brown*, 26 Ill. 2d 308, 312-313 (1962).

Some jurisdictions require, in addition, for an effective withdrawal, that the defendant make a substantial effort to prevent the commission of the crime. New York Penal Law, § 40.10; *People* v. *King*, 30 Cal. App. 2d 185, 204 (1938). See also Am. Law Inst., Model Penal Code, § 2.06 (Proposed Official Draft, 1962); and comment to § 2.04 (5) of Tent. Draft No. 1, at 37-38 (1953).

persons to commit the crimes . . . and did nothing more, . . . [t]hat alone does not make him an accessory before the fact," some active participation in or furtherance of the criminal enterprise being required. *Commonwealth* v. *Perry,* 357 Mass. 149, 152 (1970), citing *Commonwealth* v. *Stasiun, supra,* at 47-48. See G. L. c. 274, § 2; *Commonwealth* v. *Murphy,* 1 Mass. App. Ct. 71, 77 (1973); *United States* v. *Peoni,* 100 F. 2d 401, 402 (2d Cir. 1938); *Bailey* v. *United States,* 416 F. 2d 1110, 1113 (D. C. Cir. 1969). The defendant must be shown to have counselled, hired or otherwise procured the principals, rendered aid, assistance or encouragement, or to have been in a position ready to render aid in the commission of the crime. *Commonwealth* v. *Perry, supra,* at 151-152. See *Commonwealth* v. *Knapp,* 9 Pick. 495, 517 (1830).

In *Commonwealth* v. *Perry,* the defendant associated with the principals prior to and after the crime, had knowledge of the intended crime, waited a block from the scene of the robbery because he feared he would be recognized, and planned to be picked up after the holdup. The Supreme Judicial Court found that because there "was no showing that . . . [the defendant] was in any location or position where he could aid in any way the commission of the crimes," *Commonwealth* v. *Perry, supra,* at 152, citing *Commonwealth* v. *Knapp, supra* (see also *Commonwealth* v. *Murphy, supra,* at 71) he could not be found liable as an accessory. But see *Commonwealth* v. *Pina,* 360 Mass. 139, 142 (1971).

In the case at hand, however, the defendant was in a position where he could aid in the commission of the armed robbery. The defendant not only associated with the principals over the entire course of the enterprise and offered to break and jump through the window on the earlier reconnaissance of the apartment, but he also sat next to the open door in the car parked directly in front

of the building where the crime was perpetrated (the car in which the rifle was stored and from which it was later taken during the course of the crime) and after the shooting received the rifle and stolen items.

Thus there was sufficient evidence from which the jury could find that the defendant participated in a joint enterprise to steal certain money belonging to Peter Kyriazopoulos and that the defendant both assisted in the commission of the crime and did so with the intent to take, by force of arms if necessary, the money from Kyriazopoulos' person.

*Judgment affirmed.*