COMMONWEALTH *vs.* LARRY MICHEL.

Essex.   December 3, 1974. — April 22, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Robbery. Mayhem. Joint Enterprise. Constitutional Law,* Confrontation of witness. *Attorney at Law,* Privileged communication. *Witness,* Cross-examination, Privilege. *Waiver. Perjury. Evidence,* Judicial knowledge. *Practice, Criminal,* Discretionary control of evidence, Ordering verdict.

Evidence at a criminal trial warranted findings that the defendant participated with occupants of his car in a brutal assault on another occupant when everyone alighted from the car, and participated in a robbery of the victim which was not completed until the assailants had finished their attack and left him without his wallet, which was found empty some thirty feet from the place of the assault.   [456-458]

Evidence of participation with others in a malicious beating which led to the partial tearing off of an ear of the victim warranted conviction of the defendant of mayhem under G. L. c. 265, § 14. [458-459]

At the trial of the defendant for robbery and mayhem, where the judge may have defined the attorney-client privilege too broadly in instructing a witness for the Commonwealth that he need not disclose anything that his attorney had told him with respect to offers by the prosecutor in the witness's absence not to prosecute pending criminal charges against him if he would testify in the current trial, and the witness upon cross-examination by counsel for a codefendant described the substance of the witness's conversations with his attorney, and the prosecution brought forth in

great detail all negotiations with the attorney for the witness which preceded his testimony, it was held that the privilege was waived, and that there was no impairment of the defendant's constitutional right to cross-examine the witness as to possible bias. [459] At a jury waived trial of indictments for robbery and mayhem, the defendant was not deprived of any constitutional rights by any cumulative effect of actions by the judge in remanding the victim to the sheriff on a presumption of perjury pursuant to G. L. c. 268, § 4, following completion of the victim's testimony [462]; in considering all the testimony of a witness who first denied having been present at the robbery but who testified precisely contrawise and as a witness for the Commonwealth following a conference with his attorney [462]; in admitting an exhibit immediately after completion of the direct examination of the witness who introduced it [462-463]; and in failing to make a finding of not guilty on the Commonwealth's opening [463].

INDICTMENTS found and returned in the Superior Court on September 14, 1972.

The cases were heard by *Bennett, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Anthony R. DiFruscia* for the defendant.

*Robert J. O'Sullivan,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant was convicted of robbery and mayhem in a jury waived trial in the Superior Court. The cases were taken on appeal under the provisions of G. L. c. 278, §§ 33A-33G, and were transferred here from the Appeals Court pursuant to G. L. c. 211A, § 10 (A). The evidence can be briefly stated.

On March 19, 1972, the victim, one William Howard Cole, encountered the defendant at "The Vets," a drinking establishment in Lawrence. From there they proceeded to a series of drinking spots, traveling in a car driven by the defendant. They departed the last establishment in the company of three other individuals, two brothers named Dennis Dietrich and Ernest Dietrich,

and Walter Coyne, Third.[1]  In due course the car turned
off a Methuen street onto a snow covered road running
between a playground and a cemetery.  The car stopped
and everyone alighted.  Thereupon Cole was robbed of
his wallet and unmercifully beaten.  He was kicked in
the head repeatedly, struck with a broken beer bottle,
and a cemetery urn was dropped on his chest.  As a
result he received numerous lacerations, his jaw and
right leg were fractured, and his left ear was partially
torn off.  His assailants left him in this condition in the
snow, clad only in his undershorts, his clothes having
been ripped off in the process of his beating.  It appears
that the four occupants of the car other than Cole then
returned to the English Social Club in Lawrence, one of
the drinking spots they had visited previously that day.
On the following day the police found two stained jackets
behind the English Social Club building.  The manager
at that club identified one of these jackets as that worn
by the defendant on the previous evening.  It was intro-
duced as an exhibit.  Further reference to testimony will
be made as required hereafter.

The appeal brings three issues here:  (1) the judge's
refusal to make findings of not guilty of the robbery and
mayhem charges;  (2) an alleged denial of the right of
confrontation with respect to the testimony of the witness
Coyne;  and (3) an alleged denial of due process in the
judge's conduct of certain aspects of the trial.

1. In considering the defendant's motion for findings
of not guilty (only Michel has perfected his appeal), we
consider the evidence most favorable to the Common-
wealth.  *Commonwealth* v. *Burns,* 362 Mass. 875 (1972).
Michel first contends that there is insufficient evidence to
indicate that he participated in the robbery.  He relies on

[1] Michel, the two Dietrichs, and Coyne were all indicted for
robbery and mayhem and tried jointly.  During the trial the indict-
ments against Coyne were nol prossed and he was given immunity
from any future proceedings except for perjury related to any testi-
mony he might give as a witness in the trial.

*Commonwealth* v. *Benders,* 361 Mass. 704, 708 (1972),
in which it was stated that "mere presence at the
commission of the wrongful act and even failure to take
affirmative steps to prevent it do not render a person
liable as a participant." Accord, *Commonwealth* v.
*Clark,* 363 Mass. 467, 472-473 (1973). To be convicted
as a principal the defendant must have participated to
some extent in the commission of the offense. *Common-
wealth* v. *Jacobson,* 260 Mass. 311, 326 (1927).
*Commonwealth* v. *Stasiun,* 349 Mass. 38, 49 (1965).
*Commonwealth* v. *Medeiros,* 354 Mass. 193, 198 (1968),
cert. den. sub nom. *Bernier* v. *Massachusetts,* 393 U. S.
1058 (1969). *Commonwealth* v. *Pina,* 360 Mass. 139,
143 (1971). *Commonwealth* v. *Benders, supra.* G. L.
c. 274, § 2. We have no doubt that the evidence in this
instance suffices to enable the fact finder to infer the
defendant's participation in the robbery. The victim had
testified that someone demanded his wallet containing ten
or twenty dollars upon the arrival of the car near the
cemetery, and that when he failed to hand it over he was
slugged. The brutal beating followed and his wallet was
later found empty some thirty feet away. There can be
little doubt in establishing that this was a robbery.
*Commonwealth* v. *Novicki,* 324 Mass. 461, 465 (1949).
G. L. c. 265, § 19. Cole testified that he was dazed
during the course of the beating and could not recall
whether two or three individuals assaulted him, but the
day following the incident he did identify the defendant
from a picture as one of those present at the scene. Also
present was Coyne who, in testimony for the Common-
wealth, stated that "three of them were beating him up,"
that is, the Dietrich brothers and the defendant Michel.
In response to a query from the judge as to whether his
testimony was that the defendant "took some part in
what was being done to Mr. Cole," he answered in the
affirmative. The discovery of the defendant's jacket the
following day was further evidence of his participation
since it had been identified as being worn by him on

March 19. There was testimony that on March 19 it appeared "new and clean" as contrasted with its condition when discovered, when it was "stained." It is argued by the defendant that the foregoing evidence might indicate his part in the assault but not in the robbery. He stresses Coyne's testimony that he and Coyne had left the motor vehicle initially and had returned to find the Dietrich brothers already engaged in "beating up" Cole. This indicates, he says, that any participation in the assault by him came after the robbery was complete. See *Commonwealth* v. *Flowers*, 1 Mass. App. Ct. 415 (1973). The trouble with this argument is that there was no evidence that Cole's wallet had been taken from him prior to the time that the defendant took part in the beating, a fact situation dissimilar to that in the *Flowers* case. Furthermore, there was evidence that the empty wallet was found some thirty feet from the spot where the beating took place. A "reasonable and possible" inference, *Commonwealth* v. *Medeiros, supra,* at 197, is that the robbery was not completed until after the assailants had finished their attack on Cole and left him minus his wallet. See *Commonwealth* v. *Novicki, supra,* at 465; *Commonwealth* v. *Beaulieu,* 333 Mass. 640, 644-645 (1956), cert. den. sub nom. *Weaver* v. *Massachusetts,* 351 U. S. 957 (1956), and cert. den. sub nom. *Boisvert* v. *Massachusetts,* 352 U. S. 857 (1956). Cf. *Commonwealth* v. *Green,* 302 Mass. 547, 555 (1939). Thus, the judge could have found a causal connection between the defendant's use of violence and the taking of Cole's money. *Commonwealth* v. *Jones,* 360 Mass. 498, 502 (1972). LaFave and Scott, Criminal Law, § 94, at 696-702 (1972). Anderson, Wharton's Criminal Law & Procedure, § 559 (1957). There was no error in the denial of the defendant's motion for a finding of not guilty on the robbery charge. Nor was there error in denying a finding of not guilty as to the mayhem charge. The evidence of the defendant's participation in this

malicious beating, which led to the partial tearing off of the victim's left ear, was sufficient to sustain a conviction under G. L. c. 265, § 14.

2. The defendant claims error in the judge's refusal to strike direct testimony of the witness Coyne after the defendant was allegedly denied the right to cross-examine Coyne fully relative to possible bias. This argument stems from an arrangement made by Coyne with the prosecution where in exchange for Coyne's testimony the prosecution would nol pros the indictments against Coyne in the instant cases, as well as file a disclaimer of two rape charges then pending against him. Since all negotiations with the prosecutor's office were handled by Coyne's attorney in his absence the judge instructed Coyne as to the attorney-client privilege, telling him that he need not answer questions about his arrangements with the prosecutor which would involve "[a]ny talk between you and . . . [your attorney], where there was nobody else there."

It has long been the law in the Commonwealth that parties are entitled as matter of right to reasonable cross-examination of a witness for the purpose of showing bias. *Commonwealth* v. *Russ*, 232 Mass. 58, 79 (1919). *Commonwealth* v. *Sansone*, 252 Mass. 71, 74 (1925). Within the scope of this cross-examination it is proper to inquire whether the witness expects more favorable treatment from the government in return for his testimony. *Commonwealth* v. *Bosworth*, 22 Pick. 397, 400 (1839). *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 726-727 (1973). Wigmore, Evidence, § 967 (Chadbourn rev. 1970). This right of cross-examination may assume constitutional dimensions under the confrontation clause of the Sixth Amendment to the Constitution of the United States, and art. 12 of the Declaration of Rights of the Constitution of the Commonwealth. *Douglas* v. *Alabama*, 380 U. S. 415, 418 (1965). *Chambers* v. *Mississippi*, 410 U. S. 284, 295 (1973). *Davis* v. *Alaska*, 415 U. S. 308, 315 (1974). *Commonwealth* v. *Johnson*,

365 Mass. 534, 543 (1974). Most recently, in the case of *Davis* v. *Alaska,* the Supreme Court held that the right to cross-examine a witness for possible bias arising out of his probationary status as a juvenile delinquent transcends the State's interest in preserving the confidentiality of juvenile records. Furthermore, it has been held that where the witness's credibility is a critical issue in the case, the requirements of due process also mandate that the jury be aware of "evidence of any understanding or agreement as to a future prosecution." *Giglio* v. *United States,* 405 U. S. 150, 154-155 (1972).

It is thus apparent that in certain circumstances assertion of an attorney-client privilege in such a way as to prevent the defense from exposing the bias of an important witness may deprive the defendant of his constitutional rights. Properly applied, however, the privilege should present no obstacle to inquiry into promises made to the Commonwealth's witnesses. Typically, as in this instance, discussions will have taken place with counsel of a prospective witness in the absence of the witness. A. B. A. Standards Relating to the Administration of Criminal Justice, The Prosecution Function, § 4.1 (b) (1974); The Defense Function, § 6.2 (1974), and commentary in Approved Draft (1971). But from the fact that such a prospective witness is educated on the arrangements with the prosecution only through his counsel it does not follow that the attorney-client privilege prevents inquiry into the details of the arrangements. The privilege applies only to matters discussed between the attorney and his client which are confidential in nature, and not to matters known to third persons, or intended to be made public. *Ramacorti* v. *Boston Redevelopment Authy.* 341 Mass. 377, 380-381 (1960). Wigmore, Evidence, § 2311 (McNaughton rev. 1961). McCormick, Evidence, § 91 (2d ed. 1972). While an attorney's advice to his client on whether to accept the offer of the prosecution may be confidential, it is evident that the attorney's recitation of that offer is not

confidential, for necessarily the offer is known to the prosecutor and it is likely to become the basis of a statement for the record in court. A. B. A. Standards Relating to the Administration of Criminal Justice, The Prosecution Function, § 4.4 (1974); The Defense Function, § 6.2 (1974), and commentary in Approved Draft (1971) at 251-252. See *Esposito* v. *United States,* 436 F. 2d 603, 605-606 (9th Cir. 1970).

It would thus appear that the judge may have defined the privilege too broadly in instructing Coyne that he need not disclose anything that he and his attorney had discussed. In any event, we do not believe that the defendant's constitutional rights were impaired. Whatever Coyne believed to be the scope of his privilege, it is evident that the privilege was waived. On cross-examination he was asked by counsel for a codefendant to describe the substance of his conversation with his attorney with regard to any charges pending against him. We quote from the colloquy.

COUNSEL FOR THE DEFENDANT: "What was said?" THE WITNESS: "What was said?" COUNSEL FOR THE DEFENDANT: "Yes." THE WITNESS: "He said if I testify, these charges would be dropped." COUNSEL FOR THE DEFENDANT: "And if you didn't testify?" THE WITNESS: "I would be hit with a big bit." COUNSEL FOR THE DEFENDANT: "What did that mean to you?" THE WITNESS: "What do you mean, what?" COUNSEL FOR THE DEFENDANT: "The big bit?" THE WITNESS: "Fifteen to 20 years."

A similar colloquy took place at another point in the cross-examination. In addition, the prosecution itself called to the stand the first assistant district attorney for Essex County who described in great detail all negotiations with Coyne's attorney which preceded Coyne's testimony for the Commonwealth. Therefore, despite the potential limitation on cross-examination which was the consequence of the judge's broad instruction on the privilege, the issue of the witness's bias was fully before the fact finder and the defendant's rights were amply

protected. *State* v. *Brown,* 321 Atl. 2d 478, 485 (Maine 1974). Cf. *Davis* v. *Alaska,* 415 U. S. 308, 318 (1974).

3. The defendant makes reference to four alleged shortcomings in the conduct of the trial which he says, considered together, denied him due process and equal protection. (a) After the victim Cole had completed his testimony, the judge remanded him to the sheriff on a presumption of perjury. The defendant said that this was an indication that the judge was aware of extraneous facts not in evidence, since Cole's statements were not so contradictory as to constitute perjury. But the judge operated within the authority of G. L. c. 268, § 4, in concluding that this testimony created a reasonable presumption of perjury. The judge had an opportunity to observe the witness's demeanor and "had a right to use his knowledge of human nature and his judicial experience in determining the character of the testimony." *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 34 (1930), cert. den. 283 U. S. 819 (1931). Our reading of the transcript does not convince us that the judge relied on extraneous facts in making his determination. (b) The defendant lodges another complaint that the court considered the perjured testimony of Coyne. First, on direct examination, Coyne denied having been present at the robbery, but following a conference with his attorney he testified for the Commonwealth as described above. We find the defendant's complaint without merit. The existence of inconsistencies in a witness's testimony may bear on the weight to be given the testimony by the fact finder but it is not required that the testimony be rejected in its entirety. *Commonwealth* v. *Wood,* 11 Gray 85, 93 (1858). *Commonwealth* v. *Billings,* 97 Mass. 405, 406 (1867). *Commonwealth* v. *Snow,* 111 Mass. 411, 417 (1873). *Berggren* v. *Mutual Life Ins. Co.* 231 Mass. 173, 178 (1918). *Boston* v. *Santosuosso,* 307 Mass. 302, 344 (1940). (c) There was no error in the judge's decision to admit a jacket as an exhibit after the direct examination of the witness

through whom the jacket was introduced had been completed. It is within the judge's discretion to permit the introduction of competent evidence out of the usual order for admission of evidence. *Commonwealth* v. *Piper*, 120 Mass. 185, 187 (1876). *Commonwealth* v. *Meaney*, 151 Mass. 55, 56-57 (1890). *Commonwealth* v. *Corcoran*, 252 Mass. 465, 488 (1925). *Commonwealth* v. *Fine*, 321 Mass. 299, 304 (1947). *Commonwealth* v. *Whooley*, 363 Mass. 313, 318 (1972). (d) There was no error in failing to make a finding of not guilty on an opening by the Commonwealth. We do not agree with the contention that the opening was void of any implication of the defendant in robbery and mayhem, and in any event a judge cannot be required to direct a verdict or make a finding of not guilty on an opening. *Perry* v. *Carter*, 332 Mass. 508, 509 (1955). *Commonwealth* v. *Hartford*, 346 Mass. 482, 489 (1963). *Commonwealth* v. *Binnette*, 351 Mass. 704 (1966). *Commonwealth* v. *van Kooiman*, 353 Mass. 759 (1967). *Commonwealth* v. *Sloane*, 361 Mass. 872 (1972). Since we find no merit in the above allegations, we cannot conclude that taken together they amount to a deprivation of any of the defendant's constitutional rights.

*Judgments affirmed.*