## Commonwealth *vs.* A Juvenile (No. 1).

Suffolk.  September 10, 1985. — October 16, 1985.

Present: Hennessey, C.J., Liacos, Abrams, Nolan, & O'Connor, JJ.

*Homicide.  Joint Enterprise.  Practice, Criminal,* Instructions to jury. *Self-defense.*

At the trial of a juvenile on a murder charge arising from a homicide committed by a confederate, error, if any, arising from the judge's instructing the jury on a joint venture theory based upon voluntary manslaughter presented no grounds for reversal, where the jury found the juvenile delinquent by reason of murder in the first degree, and where the judge had properly instructed the jury as to the elements of joint venture and the crime of murder. [110-111]

Where at the trial of a juvenile on a murder charge the jury during deliberations asked the judge whether the accused was being tried as a juvenile or an adult, the judge's response, that the accused was being tried as a juvenile and that the jurors were not to consider the age of the juvenile or the consequences of their verdict in reaching a decision, did not, as claimed by the defendant, improperly place sentencing consequences before the jury. [111-113]

Where at the trial of a juvenile for murder there was no evidence presented to warrant an instruction on self-defense, the judge's failure to repeat instructions on the Commonwealth's burden of proof when he instructed on self-defense was of no consequence. [113-114]

On appeal by a juvenile from an adjudication of delinquency by reason of murder, there was no merit to the juvenile's contention that the judge erred in failing to instruct the jury that the Commonwealth bears the burden of proving beyond a reasonable doubt the lack of reasonable provocation or excessive force. [114-115]

Complaint received and sworn to in the Dorchester Division of the District Court Department on July 26, 1983.

The case was tried in the Boston Division of the Juvenile Court Department before *Kenneth P. Nasif,* J.

*Sandra L. Hautanen (Paul V. Buckley* with her) for the defendant.

*Robert Tochka,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  The juvenile was adjudicated a delinquent by reason of murder in the first degree following a jury trial in the Boston Juvenile Court. The juvenile was thereupon remanded to the custody of the Department of Youth Services. He appeals, challenging the propriety of the judge's charge to the jury and of the judge's answer to an interrogatory posed by the jury.

On appeal, the juvenile argues three errors of law: that the judge (1) improperly instructed the jury that, under the theory of joint venture, the juvenile could be found guilty of voluntary manslaughter committed in the heat of passion; (2) failed to instruct the jury on the Commonwealth's burden of proving beyond a reasonable doubt that the juvenile did not act in self-defense, in response to reasonable provocation, or with excessive force; and (3) improperly put the issue of sentencing consequences before the jury. We reject the juvenile's contention that the judge's instructions constituted reversible error, and accordingly affirm the decision of the Juvenile Court.

We summarize the facts. This case involves a shooting in the area of Corona Street in Boston. On the evening of July 14, 1983, the juvenile became involved in an argument with one Renee Burns in front of a house at 49 Corona Street. During the course of this argument the juvenile threatened Geraldine Clagon, a friend of Burns. After arguing with the juvenile, Clagon went to "get [her] brother," Frank Clagon, and to inform him about the threats made moments earlier by the juvenile. Upon hearing the complaints of their sister, Frank and Glen Clagon went to 49 Corona Street to talk to the juvenile and to discover what had happened. The juvenile was unwilling to discuss the issue with the Clagons, and threatened to enlist the aid of his cousin, Herbert Johnson, in the dispute.

On the afternoon of July 15, the juvenile, his cousin Herbert Johnson, and at least three other men went to the Clagon home looking for Frank Clagon. Glen Clagon informed them that his brother was not at home. Members of the juvenile's group told Clagon that they intended to "get" Frank for having antagonized the juvenile on the previous day, and made similar threats to Glen before leaving the Clagon household.

Later that evening, a physical confrontation ensued between the Clagon family and members of the juvenile's group. Glen Clagon, accompanied by his brother David Norman and friends Arthur and Stephen Gerald, walked down the hill toward the house at 49 Corona Street. Stephen Gerald, wielding a baseball bat, was the only member of the Clagon group who was armed. Members of the juvenile's group, stationed in front of 49 Corona Street, were all armed with handguns, with the exception of Herbert Johnson, who was carrying a shotgun.

As the Clagon group approached, one of them shouted that they had come to talk and did not want to fight. At this point Herbert Johnson fired his shotgun in the air and ordered everyone to "freeze." Herbert Johnson then leveled his shotgun and fired a second shot directly up the street. This second gunshot struck Stephen Gerald in the head, causing injury which subsequently resulted in his death.[1]

During this confrontation the juvenile was standing on the steps of 49 Corona Street with his handgun at his side. After Stephen Gerald was struck, both groups scattered. The police arrived moments later. Stephen Gerald was taken by ambulance to Boston City Hospital, where he was pronounced dead the following day.

1. *The Joint Venture Charge.*

At the close of all the evidence the judge instructed the jury that the juvenile could be convicted for the shooting of Stephen Gerald, even though he did not actually pull the trigger, if the juvenile aided, commanded, counseled, or encouraged Herbert Johnson while sharing the mental state required for the crime. As counsel for the juvenile concedes in his brief, this joint venture instruction was correctly worded under the law of the Commonwealth. If, by agreement, the juvenile was "in a position to render aid he is an abettor even if he does not participate in the actual perpetration of the crime because his presence may encourage the perpetrator by giving him hope of immediate

---

[1] In a related action, Commonwealth *vs.* Herbert Johnson (Superior Court, Suffolk County, Crim. No. 045150, December 18, 1984), the defendant pleaded guilty to the crime of manslaughter.

assistance." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). See also *Commonwealth* v. *Pina*, 360 Mass. 139, 143 (1971).

The trial judge gave the jury a joint venture instruction on both the crime of murder and the crime of manslaughter. The juvenile argues on appeal that it was error for the judge to instruct the jury on joint venture with regard to the crime of voluntary manslaughter, because the mental state required for the commission of a crime in the heat of passion cannot be imputed to a passive party. If Herbert Johnson shot and killed Stephen Gerald in the heat of passion, the juvenile argues, the juvenile could not lawfully be charged as a joint venturer because it is impossible to share the spontaneous, unexpected, and passionate mental state required for this crime.

Assuming without deciding that a manslaughter conviction cannot be supported on a joint venture theory based upon a heat of passion mens rea, no grounds for reversal are presented to this court because the juvenile was found delinquent by reason of murder in the first degree and not by reason of manslaughter. The judge properly instructed the jury as to the elements of joint venture and the crime of murder, and the jury returned a verdict of murder in the first degree. Implicit in this verdict is the finding that the principal shot and killed Stephen Gerald with premeditation and malice aforethought, and that the juvenile both encouraged the principal and shared with him the mental state required for this crime.

Although the juvenile's argument might be relevant had the judge improperly charged the jury regarding the elements of joint venture, or had the jury returned a manslaughter verdict, it has no force where the elements of joint venture and murder were properly explained by the judge and the jury returned a verdict of murder in the first degree. The instruction regarding manslaughter, even if inappropriate, is simply not relevant on appeal.

2. *Juvenile Status of the Accused.*

Sometime after the jury had retired, they submitted a five-part question to the judge. The first four parts of this question requested a review of the elements of murder, manslaughter,

and joint venture. The fifth part of this question inquired "[I]s [the accused] being tried as a juvenile or an adult?" Defense counsel requested the trial judge to answer this last inquiry simply and concisely, "[Y]es, he is being tried as a juvenile." However, the trial judge chose a more extensive response to this question, cautioning the jury, "[Y]ou do not have to consider or be bothered with the fact that this is a juvenile case, nor should you consider that if you were to return a verdict of guilty that some punishment may be imposed. That is not your province. You are not to consider that." The juvenile argues on appeal that this response by the trial judge improperly placed the issue of sentencing consequences before the jury.

We have long held it improper for a judge to place the issue of punishment before the finder of fact. A jury's verdict must be based solely on the evidence in the case, without regard to the possible consequences of their decision. *Commonwealth* v. *Smallwood*, 379 Mass. 878, 882 (1980). But cf. *Commonwealth* v. *Mutina*, 366 Mass. 810, 817 (1975). The role of the jury is to make findings of fact and to determine the guilt or innocence of the accused without regard to probable punishment. To inform jurors of the sentencing consequences of their verdicts is to invite result-oriented verdicts and possible deviation from the basic issues of a defendant's guilt or innocence. *Id.*

Having reiterated these general principles, we cannot agree that the trial judge improperly placed the issue of sentencing consequences before the jury in this case. On the contrary, the judge went out of his way to impress on the jury the fact that punishment was *not* a matter for their concern. The judge reasonably inferred from the jurors' interest in the juvenile's status that they were concerned about the nature and extent of punishment. After responding straightforwardly that they were seated as jurors in a juvenile case, the judge directed the jury, in general terms, not to consider the age of the juvenile or the consequences of their verdict in reaching a decision. We perceive no error in this instruction. By merely invoking the term "punishment," the judge did not place sentencing consequences before the jury. Rather, both the purpose and the effect of his

charge was to remove this consideration from their minds.[2] We cannot presume that the jury failed to heed the judge's admonition. *Commonwealth* v. *Fazio*, 375 Mass. 451, 458 (1978), and cases cited. *Commonwealth* v. *Bellino*, 320 Mass. 635, 645, cert. denied, 330 U.S. 832 (1947).

3. *Self-defense Instruction.*

The juvenile argues as his third issue on appeal that the judge improperly charged the jury on the Commonwealth's burden of proof concerning the issues of self-defense, reasonable provocation, and excessive force. Specifically, the juvenile contends that the judge failed to instruct the jury that the Commonwealth bears the burden of proving beyond a reasonable doubt the absence of each of these mitigating factors. Although the judge gave appropriate burden of proof instructions at the beginning of his charge to the jury, he failed to reintroduce the subject in the context of his instructions on self-defense, reasonable provocation, and excessive force.

The due process clause of the Fourteenth Amendment to the United States Constitution protects the accused from conviction except on proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364 (1970). Where the issues of self-defense or reasonable provocation are fairly raised by the evidence, the Commonwealth must bear the burden of disproving these elements beyond a reasonable doubt. See *Mullaney* v. *Wilbur*, 421 U.S. 685, 702 (1975). We have held that the trial judge is required to charge the jury as to the Commonwealth's burden on these issues. *Commonwealth* v. *Stokes*, 374 Mass.

---

[2] The judge's motivation for giving such an elaborate response to the question whether the accused was being tried as a juvenile is apparent from a statement that he made to defense counsel after the written question was handed to him. The judge said, in part, "Well, I'm going to say yes, he is, but I think it's incumbent upon me, since they raised the question, to do a little more than yes or no, because I want to take out of their mind the concern about punishment. I'm sure we all agree that we don't want to go to trial on a verdict rendered based on the possibility of punishment or no punishment. That is something that shouldn't be considered in any jury trial. And the only way to do that is to explain to them that the question of punishment should not be their concern."

583, 591 (1978). It is certainly preferable, and indeed appropriate, for the judge expressly and specifically to include a burden of proof instruction within the context of his charge on self-defense or reasonable provocation. See *Commonwealth* v. *Collins*, 374 Mass. 596, 600 (1978). In more recent cases, however, we have examined the entire instruction to determine if, taken as a whole, the judge's words conveyed a correct impression of the Commonwealth's burden on these issues. See *Commonwealth* v. *Albert*, 391 Mass. 853, 857-858 (1984) (judge's instruction made clear that Commonwealth had burden of disproving self-defense); *Commonwealth* v. *Fluker*, 377 Mass. 123, 130 (1979) (over-all instruction sufficient).

In the instant case, we need not consider whether the judge improperly omitted the reasonable doubt language from his self-defense charge, or whether, on the other hand, the instruction in its entirety adequately conveyed the Commonwealth's burden. Our review of all of the evidence indicates that the judge was not required to give any self-defense instruction whatsoever. The charge that the juvenile received on this issue was more than the record warranted. There was no evidence presented in this case that Herbert Johnson was in any danger of serious bodily injury when he fired the shot which killed Stephen Gerald. All of the evidence supports the proposition that Stephen Gerald was at least twenty to thirty feet away from 49 Corona Street when the fatal shot was fired. Herbert Johnson and his cohorts were all carrying guns. The victim, carrying a baseball bat, was the only member of the Clagon group who was armed. Significantly, eyewitness testimony indicated that Stephen Gerald was beginning to back up the street in an attempt to get away from his attackers when the fatal shot was fired. Under these circumstances, any self-defense instruction given by the judge was more than that to which the juvenile was entitled. The juvenile was in no sense harmed by this abundance of caution.

Finally, we address the juvenile's contention that the judge also erred in failing to instruct the jury that the Commonwealth bears the burden of proving beyond a reasonable doubt the

lack of reasonable provocation or excessive force.[3] We disagree that the judge made this omission. The judge properly instructed the jury that the Commonwealth bears the burden of proving all of the elements of manslaughter; he then described reasonable provocation and excessive force as elements which, if found, can negate malice and reduce an unlawful killing from murder to manslaughter. Implicit in this instruction is the requirement that the Commonwealth bears the burden on these two issues. We thus perceive no error in the judge's instruction on this matter. In any event, because the jury returned a verdict of delinquency by reason of murder in the first degree, and not by reason of manslaughter, the juvenile certainly was not prejudiced by this charge.

*Judgment affirmed.*

---

[3] We address this argument despite the fact that the juvenile gave it only cursory treatment in both his brief and oral argument.