COMMONWEALTH *vs.* WILLIAM F. RYAN & another.

Suffolk.    March 4, 1969. — May 2, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Evidence,* Handwriting, Relevancy and materiality.   *Witness,* Summons. *Receiving Stolen Goods.*

At the trial of an indictment for larceny of data-processing cards against one in charge of a supply room from which the cards ordinarily could be procured only upon a written requisition, there was no error in the admission of testimony by one who had worked with the defendant for more than three years and probably had seen his handwriting more than once that on a typed copy of a requisition order for a certain number of cards an order for additional cards, which were never received or authorized by the requisitioning party, was in the defendant's handwriting.  [771]

At the trial of indictments respecting missing data-processing cards prepared solely for a division of the Commonwealth, cartons of which were found in the possession of certain business concerns, employees of each of which testified that the cards had been purchased from the defendant, a summons from him to a witness employed by one of the concerns to produce at the trial "All records, invoices, bills and receipts of any business firm, company or individual that . . . [the witness's concern] did business with" other than the defendant's concern in a designated year was too broadly worded, and there was no error in the judge's refusal to compel the witness to comply with the summons.  [772]

At the trial of indictments respecting missing data-processing cards prepared solely for a division of the Commonwealth, which the Commonwealth contended were purchased from the defendant by business concerns in whose possession the cards were found, there was no error in a refusal to allow cross-examination of the Commonwealth's witnesses

concerning immaterial transactions of such concerns with suppliers of cards other than the defendant. [772–773]

There was no error in a portion of the charge at the trial of an indictment for receiving stolen goods stating that "the possession of recently stolen property puts the burden of explanation upon the one who is charged with receiving the property, knowing it to have been stolen." [773]

FOUR INDICTMENTS found and returned in the Superior Court on May 8, 1967, and one indictment on November 14, 1967.

The cases were tried before *Lurie*, J.

*Paul J. Burns* for the defendant Ryan.

*Willie J. Davis*, Assistant Attorney General, for the Commonwealth.

*Robert A. Stanziani*, for the defendant Reppucci, submitted a brief.

SPALDING, J. These are appeals under G. L. c. 278, §§ 33A–33G. The defendant William F. Ryan appeals from convictions under indictments charging larceny, conspiracy and a violation of G. L. c. 268, § 6A.[1] The defendant Carmen Reppucci appeals from convictions under indictments charging larceny, receiving stolen goods, and conspiracy.

## THE RYAN CASE.

The evidence showed that Ryan was in charge of the supply room for the Division of Employment Security (division) of the Commonwealth of Massachusetts. Data-processing cards were stored in the supply room. Ryan, among others, had keys and access to this room. Inventory cards were maintained there for the purpose of determining the number of each type of data-processing card on hand at a given time. In January, 1967, a requisition was sent to the supply room for seven cases of a certain type of data-processing card. Although the inventory card showed that fifty-two cases should have been on hand, only four cases

---

[1] Section 6A makes it an offence for an "employee of the commonwealth" to file or publish in the course of his official duties "any false written report, minutes or statement, knowing the same to be false in a material matter."

could be found. A subsequent audit of the supply room showed that more than 2,700 cases were missing.

Mrs. Delores Bisbee, a former employee of the division, testified in an oral deposition introduced in evidence that data-processing cards ordinarily would be delivered from the supply room only if there was a requisition for them. A typed copy of a requisition order with handwritten additions was introduced. Mrs. Bisbee testified, subject to Ryan's exception, that the additions were in Ryan's handwriting. The cards represented by these additions were never received or authorized by the requisitioning party. Ryan was further connected to the theft of the cards by evidence that he and two other men were seen loading cartons of data-processing cards onto a truck which had "Reppucci Brothers" appearing on it.

1. Ryan argues that no sufficient foundation was laid for Mrs. Bisbee's identification of his handwriting. After she stated she could identify the handwriting on the copy of the requisition slip, the following occurred. Q. "Mrs. Bisbee, how long did you say you worked with William Ryan?" A. "Since December of '63." Q. "And during that time, did you have an occasion to observe his handwriting?" A. "Yes, I did." Q. "And I ask you, Mrs. Bisbee, if you saw his handwriting, would you be able to identify it?" A. "Yes." She then testified that the additions on the copy of the requisition slip were in Ryan's handwriting. The cross-examination of the witness on this issue was as follows: Q. "Now, I understand your testimony that Mr. Ryan, at one time you believed you saw what was his handwriting?" A. "Yes, sir." Q. "Was that in pencil or in writing?" A. "Ink." Q. "That was his job as your supervisor, to supervise your work?" A. "Yes." Q. "And on occasions, he made entries also, just as Charley or Frank Castro made writings on paper?" A. "He would — if it was getting behind and I wasn't in, he might have worked on my cards too, yes."

A witness who is familiar with a person's handwriting may give an opinion as to whether the specimen in question was

written by that person. *Noyes* v. *Noyes,* 224 Mass. 125, 130. Whether a witness is qualified to give such an opinion is a question, in the first instance, for the judge. *Nunes* v. *Perry,* 113 Mass. 274, 276. "In all questions of this nature the ruling at the trial will be sustained, unless it is made clearly to appear that it was based upon some erroneous view of legal principles, or that the ruling was not justified by the state of the evidence as presented to the judge at the time." *Nunes* v. *Perry, supra,* 276. We are of opinion that a sufficient foundation was laid for Mrs. Bisbee's identification of Ryan's handwriting. It is true that a witness who has seen someone's handwriting only once ordinarily would not be qualified to give an opinion. See *Noyes* v. *Noyes, supra,* 125. But Mrs. Bisbee's answers, when read in conjunction with her answers on cross-examination, together with the fact that she had worked with Ryan for more than three years, strongly suggest that she had seen Ryan's handwriting more than once. The court did not err in admitting her testimony.

2. The remaining assignments of error may be disposed of briefly. Ryan complains (second and third assignments of error) that he was unduly restricted in cross-examination. The point raised by the second assignment did not amount to prejudicial error even if, as we need not decide, the questions were improperly excluded. See *Commonwealth* v. *Smith,* 342 Mass. 180, 187–188. As to the rulings challenged by the third assignment, the short answer is that they were not excepted to by Ryan. The other assignments (including one relating to the denial of the motion for directed verdicts, which has not been argued[1]) do not merit discussion.

## THE REPPUCCI CASE.

In addition to the evidence that Ryan and two other men were seen loading cartons of data-processing cards onto a truck with "Reppucci Brothers" appearing on it, the evi-

[1] Ryan in his brief merely asserts that the judge erred in denying his motion for directed verdicts. This is not argument. *Lolos* v. *Berlin,* 338 Mass. 10, 13–14.

dence against Reppucci was as follows. The cards which were discovered missing were prepared especially for the division and contained the words "Massachusetts Division of Employment Security" on the left-hand side. These cards were prepared for no other purchaser. Cartons of these cards were found in Boston in the possession· of three business concerns, one of which was Biz-Matic Data Centers, Inc. (Biz-Matic). Employees of each of these concerns testified that the cards had been purchased from Reppucci.

3. Reppucci assigns as error the judge's refusal to compel a witness, Mrs. Toby Berent, to comply with a summons requiring the production of certain records at trial. The summons requested that Mrs. Berent, an employee of Biz-Matic, bring "All records, invoices, bills and receipts of any business firm, company or individual that Biz-Matic did business with in the year 1966 other than Reppucci Brothers and more particularly bring with you the records of invoices of 1966 that pertain to Morley Company of New Hampshire regarding miscellaneous cards and re-run cards sold to you." There was no error. A summons must describe with reasonable particularity the records to be produced, and must not call for documents that are plainly irrelevant or for so many documents as to exceed reasonable limits. *Gardner* v. *Massachusetts Turnpike Authy.* 347 Mass. 552, 561. The first part of the summons was much too broadly worded, since it presumably applied to many companies and individuals other than those which supplied data-processing cards to Biz-Matic. The reference in the summons to transactions between Biz-Matic and the Morley Company was more narrow and specific, and the judge indicated that he would compel ·compliance with this portion of it. Mrs. Berent testified, however, that there. were no such transactions during 1966, and therefore no such records could be produced.

4. Reppucci also assigns as error the judge's refusal to allow cross-examination of the Commonwealth's witnesses concerning Biz-Matic's and other companies' transactions with suppliers, other than Reppucci, of the data-processing

cards. There was no error, for the existence of any such transaction was irrelevant. The Commonwealth did not attempt to prove that Biz-Matic and the other companies bought cards exclusively from Reppucci. Rather it contended only that all cards containing "Massachusetts Division of Employment Security" were purchased from Reppucci. These cards had been prepared solely for the division. The fact that Biz-Matic and the other companies which purchased these cards from Reppucci may also have purchased other types of cards from other suppliers is immaterial.

5. Reppucci's final contention is that the court erred in instructing the jury on the crime of receiving stolen property. The judge said in his charge, "The possession of recently stolen property puts the burden of explanation upon the one who is charged with receiving the property, knowing it to have been stolen." The judge previously had stated that the Commonwealth must prove beyond a reasonable doubt the existence of knowledge on the part of the defendant. The quoted portion of the charge was in conformity with our law in the closely analogous situation in larceny prosecutions where we have held that a presumption arises from the unexplained possession of recently stolen goods. The instruction did not violate Reppucci's constitutional rights. *Commonwealth* v. *Wilbur*, 353 Mass. 376, 384, cert. den. 390 U. S. 1010, and cases cited.

6. The judgments in the Ryan and Reppucci cases must be affirmed.

*So ordered.*