COMMONWEALTH *vs.* EDWARD SITKO.

Barnstable.    December 8, 1976. — April 4, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Pleading, Criminal,* Indictment.    *Practice, Criminal,* Amendment, Nolle prosequi, Sentence.    *Breaking and Entering.    Accessory.    Constitutional Law,* Double jeopardy.

At the trial of a defendant on an indictment charging him with being an accessory to the crime of breaking and entering a building in the nighttime with intent to commit larceny, there was no error in the

allowance of a motion to amend the indictment to refer to daytime instead of nighttime. [307-309]

Evidence at a criminal trial warranted a finding that the defendant was guilty of being an accessory to the crime of breaking and entering a building in the daytime with intent to commit larceny. [309-311]

Where a defendant convicted of a crime defaulted on his obligation to appear to commence service of his sentence, the sixty-day time period of G. L. c. 278, § 29C, was tolled for the period of his absence. [311-312]

In allowing the Commonwealth's motion to revoke and revise a sentence imposed on a defendant, the judge erred in taking into account conduct of the defendant which occurred subsequent to the original sentencing. [312-314]

INDICTMENT found and returned in the Superior Court on October 8, 1970.

The case was tried before *Chmielinski*, J., and a motion to revoke and revise sentence was heard by him.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Joseph F. Flynn* (*Steven A. Clark* with him) for the defendant.

*James J. Higgins*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his conviction as an accessory to the crime of breaking and entering a building in the daytime with the intent to commit larceny.

The defendant argues three major issues. (1) The original indictment alleged that an unknown person (John Doe) "did break and enter in the night time." On motion of the Commonwealth, the indictment was amended to refer to daytime instead of nighttime. The defendant challenges the allowance of the Commonwealth's motion to amend the indictment, claiming that the judge had no authority to allow such a motion, and that, even if he did, the allowance of the amendment was prejudicial in the circumstances. (2) The defendant next argues that his motion for a directed verdict should have been allowed. (3) Finally, the defendant challenges the revision of his sentence several months after it was imposed.

There was no error in the defendant's conviction. The judge had the power to revoke and revise the defendant's sentence, but, because at least one inappropriate circumstance was considered by the judge in revoking and revising that sentence, the allowance of the Commonwealth's motion to revoke and revise must be vacated.

1. There was no error in the allowance of the prosecution's motion to amend the indictment.

The defendant first was brought to trial in April, 1972, on the charge of being an accessory to the crime of breaking and entering in the nighttime. During the course of the presentation of its case, the Commonwealth moved to amend the indictment by deleting any reference to nighttime and substituting the words "day time." The motion was allowed over the defendant's objection, and immediately the judge allowed the defendant's motion for a mistrial.

The defendant argues that the amendment of the indictment was a substantial, and hence constitutionally impermissible, change in the indictment, and that, in any event, the allowance of the motion was prejudicial and thus not authorized by G. L. c. 277, § 35A.[1]

In weighing the defendant's claim that the amendment wrought a substantial change, we assess first the relationship of the two crimes. Although the crime of breaking and entering in the nighttime and the crime of breaking and entering in the daytime are expressed in separate sections of G. L. c. 266 (see §§ 16 and 18, respectively), a verdict of breaking and entering in the daytime may be entered on an indictment charging breaking and entering in the nighttime. We have treated breaking and entering in the daytime in effect as a lesser offense within the aggravated offense of breaking and entering in the nighttime. See *Commonwealth* v. *Lavery,* 255 Mass. 327, 333-334 (1926); *Commonwealth* v. *Clifford,* 254 Mass. 390, 392 (1926);

---

[1] General Laws c. 277, § 35A, provides: "Upon motion of the district attorney or prosecuting officer, the court may order the complaint or indictment amended in relation to allegations or particulars as to which the defendant would not be prejudiced in his defence."

*Commonwealth* v. *Reynolds,* 122 Mass. 454, 456 (1877). Therefore, an amendment of the indictment in this case was not even necessary in order to sustain a charge and conviction of breaking and entering in the daytime.

No significant constitutional question concerning the protective role of the grand jury was involved here because the change was not one of substance in the sense in which we have used that word. See *Commonwealth* v. *Jervis,* 368 Mass. 638, 643 (1975); *Commonwealth* v. *Parrotta,* 316 Mass. 307, 312 (1944); *Commonwealth* v. *DiStasio,* 294 Mass. 273, 278 (1936); *Commonwealth* v. *Snow,* 269 Mass. 598, 606 (1930). The circumstance that an amendment was unnecessary is most persuasive in demonstrating that the amendment did not make a change of substance. The "substance of the [accused's] constitutional rights secured under the grand jury system is not impaired" *(Commonwealth* v. *Snow, supra* at 606) by an amendment of an indictment which reduces the crime charged to a lesser included offense. See *Commonwealth* v. *Holley,* 3 Gray 458, 459 (1855).

The amendment of the indictment was authorized by G. L. c. 277, § 35A, because the defendant was not prejudiced by the allowance of the motion to amend. Obviously, the reduction of the charge was to the defendant's immediate advantage because the penalty on conviction of the lesser offense is less than that for the greater offense. It is also obvious that the defendant cannot be charged with the greater offense again. In addition, the allowance of the defendant's motion for a mistrial cured any possible prejudice by surprise in the trial.

The only other suggestion of prejudice the defendant advances is that the action of the prosecutor was a disguised nolle prosequi which could not be granted without the defendant's consent, once trial had commenced. We have recognized the power of a prosecutor, even during trial, to terminate prosecution of a portion of an indictment with the result that the defendant is to be treated as acquitted of the charge or charges which the prosecutor has abandoned. *Commonwealth* v. *Massod,* 350 Mass. 745, 748-750 (1966). *Commonwealth* v. *Dascalakis,* 246 Mass.

12, 18-19 (1923). Thus, if, without court approval, the
prosecutor had chosen to abandon the charge of breaking
and entering in the nighttime, he could have done so. See
*Commonwealth* v. *Myers,* 356 Mass. 343, 347 n.1 (1969).
That is not what happened here.[2]

2. The defendant's motion for a directed verdict was
properly denied. Viewing the evidence in the light most
favorable to the prosecution, as we must, the jury's verdict
was warranted.

Sometime between the close of business on Saturday,
August 1, 1970, and the opening of business on Monday,
August 3, 1970, the main building of a lumber company in
South Dennis was broken into. A safe, located in a ply-
wood enclosure, was forced open and money taken from it.
That safe's enclosure was protected by a perimetric burglar
alarm which was connected with the local police station
over telephone wires. However, that alarm was not acti-
vated during the relevant times. The wires ran from the
area of the safe to a telephone junction box in a room
below the safe. Two wires in the telephone junction box
had been stripped of insulation and alligator clips attached
to those wires so as to provide power over wires connected
to six-volt batteries. This connection effectively prevented
an activation of the alarm when wires in the protective
enclosure in the area of the safe were cut.

The defendant was seen on the premises on Saturday,
August 1, dressed like a telephone lineman, although he
did not have a normal complement of tools in his belt.

---

[2] The defendant claims that, because in effect there had been a nolle
prosequi, the prosecutor was obligated under G. L. c. 277, § 70A, to file
a written statement of the reasons for the disposition and that no such
statement was filed. The defendant makes no suggestion how the ab-
sence of such a statement has prejudiced his position. In any event, we
doubt that a defendant has any ground for relief on appeal because a
prosecutor failed to file a statement of reasons for his decision to enter
a nolle prosequi. The statement of reasons is designed to protect the
public's interest in the integrity of the prosecutor's decision and not to
advise the relieved defendant of the reasons for the decision. Moreover,
as a practical matter in this case, the prosecutor's statement in open
court that the evidence showed the breaking and entering to be in the
daytime certainly fulfilled the substantial purpose of the statutory re-
quirement of disclosure.

He inspected a junction box at one building which was not broken into and inquired about the location of the "electronic system" in another building. The defendant worked for at least one-half hour in the area of the telephone junction box in the main building where the stripped wires and batteries were discovered on Monday morning. The witness who saw the defendant working at this junction box could not say what the defendant was doing.

We think this evidence and the inferences which reasonably can be drawn from it are sufficient to warrant a finding that the defendant was an accessory to the crime of breaking and entering the lumber company's main building with intent to steal. The defendant was seen on the premises working in the area of a junction box where, within forty-eight hours, wires were found to have been stripped and substitute power furnished so as to neutralize the warning system in the vicinity of the safe. The defendant generally observed the operation of the warning system on the premises. He had the opportunity to determine that the only alarm system related to a safe in the main building and that the alarm would not be set off by a forced entry into the premises. An inference is justified that the defendant advised and counseled the persons who forced their way into the building, by-passed the alarm system, and stole money from the safe. Such evidence is sufficient to support a finding that the defendant was an accessory to the crime of breaking and entering with intent to steal.

The defendant argues that, even if there is evidence to support his involvement, the evidence relates at most to the crime of larceny from the safe and not to breaking and entering the premises. He points out that he was charged with being an accessory to the crime of breaking and entering the premises and not with being an accessory to larceny or attempted larceny. We think the defendant's study of the alarm system might well be sufficient support to the charge concerning breaking and entering, but we need not rest on that ground. One who counsels and assists in disclosing facts concerning the goal of the entry of premises is an accessory to the crime of breaking and entering with intent to commit larceny in those premises.

The defendant's conduct facilitated the achievement of the purpose of breaking into the premises and thus he counseled and encouraged the illegal entry of the premises for the purpose of larceny from the safe. See *Commonwealth* v. *Perry*, 357 Mass. 149, 151-152 (1970); *Commonwealth* v. *Dahlstrom*, 354 Mass. 130, 132 (1962).

3. The defendant contends that the judge had no authority to revoke and revise his sentence because the Commonwealth's motion to revoke and revise was allowed more than sixty days after the imposition of sentence. He also challenges the propriety of the judge's action, assuming the judge had authority to revise the sentence.

On April 22, 1974, the day the defendant was found guilty, the judge sentenced him to the Massachusetts Correctional Institution at Walpole, for a term of from three to five years. At the request of defendant's counsel, the judge stayed execution for one week. The defendant did not appear at the end of that week and was defaulted. He was apprehended in Rhode Island in November, 1974, and, following rendition proceedings, was brought before the judge on January 17, 1975, on the Commonwealth's motion to revoke and revise the original sentence. The judge increased the sentence to eight to ten years at Walpole. Subsequently, by motion, the defendant sought unsuccessfully to have the judge revoke and revise the sentence of January 17, 1975. He has challenged both the allowance of the Commonwealth's motion, and the denial of his motion, to revoke and revise. The basic issues of law are the same as to each motion.

Section 29C of G. L. c. 278, which is set forth in the margin,[3] authorizes a judge to revoke and revise any sentence imposed "within sixty days after a sentence has been imposed" where "it appears ... that justice has not

---

[3] General Laws c. 278, § 29C, inserted by St. 1962, c. 310, § 2, provides: "If it appears to the superior court that justice has not been done or cannot be done, it may within sixty days after a sentence has been imposed, upon such terms and conditions as it shall order, revise or revoke any sentence imposed: if such sentence was imposed without trial after a plea of guilty or nolo contendere the court may in the event of such revocation permit the withdrawal of the plea upon which the sentence was imposed."

been done . . . ." We acknowledge that in common parlance the defendant's sentence was imposed on April 22, 1974. We are not inclined to substitute the date of commencement of execution of sentence for the clear statutory reference to the date of imposition of sentence. We have held that a judge has no power to extend the sixty-day period which appears in the language now found in G. L. c. 278, § 29C. *Commonwealth* v. *Burrone,* 347 Mass. 451, 453 (1964) (construing the same language which until 1962 appeared in G. L. c. 278, § 29, as amended by St. 1957, c. 302).

The question remains, however, whether a convicted defendant can isolate himself completely from the operation of § 29C by absenting himself from the jurisdiction of the court and law enforcement agencies of the Commonwealth for a period of at least sixty days from the date of sentence. We think he cannot do so and conclude that on January 17, 1975, the defendant was properly subject to the application of § 29C. The defendant's absence, in default of his obligation to appear to commence service of his sentence, in effect tolled the time period in § 29C for the period of that absence. Such a result permits the statute to operate as the Legislature intended, and denies the defendant the opportunity to benefit from his own misconduct. We turn then to the question whether the sentence properly was revoked and revised.[4]

---

[4] We need not pass on the question whether the judge had the power, apart from G. L. c. 278, §29C, to revoke and revise the defendant's sentence. No part of the defendant's sentence had been executed, and the defendant's appeal had not been concluded. We have long recognized that, if under statutory authority a judge suspends execution of a defendant's sentence pending appeal, the court may correct manifest errors of law and fact which enter into a sentence no part of which has been executed. *Fine* v. *Commonwealth,* 312 Mass. 252, 256 (1942). *Commonwealth* v. *Lobel,* 187 Mass. 288, 289 (1905). *Commonwealth* v. *O'Brien,* 175 Mass. 37, 39-40 (1899). Perhaps the same principle should apply to the briefer stay of execution which existed in this case. See *District Attorney for the N. Dist.* v. *Superior Court,* 342 Mass. 119 (1961), for a discussion of the power of a judge, prior to the enactment of G. L. c. 278, § 29C, to reduce sentence after execution of sentence had begun.

Although the judge had the power to revoke and modify the defendant's sentence in January, 1975, it appears that the judge may have given weight to improper considerations in increasing the defendant's sentence. Therefore, we remand the case for resentencing.

The district attorney advised the judge that the basis for his motion was information obtained from the FBI which was not available at the time of sentencing. The defendant's counsel argued that the defendant's failure to appear should have no bearing on the sentence to be served for the crime for which he was convicted. The judge observed that, although sentence had been imposed, execution of the sentence had not commenced.[5] He said that the defendant "took it upon himself to flee the jurisdiction, and I notice also that subsequent to the sentence imposed by this Court, there are some other offenses which I am also taking into consideration, subsequent conduct." The record is silent on the reasons for the defendant's failure to appear to commence serving his sentence. But even if we assume his absence was voluntary, the judge could not have punished him summarily for failing to appear. *Sclamo* v. *Commonwealth,* 352 Mass. 576, 578 (1967). In any event, the defendant's failure to appear, which is a separate offense (G. L. c. 276, § 82A), should not have been considered in any revision of his sentence. A judge's belief in the guilt of a defendant as to another potential or pending charge should play no part in the sentencing process. *Commonwealth* v. *LeBlanc,* 370 Mass. 217, 223 (1976). Moreover, the default did not exist at the time of the original sentencing and hence could not constitute a failure to do justice in the original sentencing.

---

[5] The judge was correct in saying that the defendant had not commenced serving his sentence and that the sentence had not been executed. The defendant was held under the capias which issued when he defaulted and was not held in execution of his sentence. *Commonwealth* v. *O'Brien,* 175 Mass. 37, 40 (1899).

The fact that execution of sentence was stayed for one week does not mean that, when the defendant failed to appear, execution of the sentence commenced automatically in the defendant's absence.

We do not know what the additional information from the FBI was. If it related to matters which occurred before the date of original sentencing, that information could be considered on the motion to revoke and revise if it appears that justice was not done in the sentencing. If the information related to postsentencing events, that information could not support a finding of some injustice in the original sentencing which would justify a revision of that sentence. Because the judge considered the defendant's default in revising the sentence and considered other material, which may be irrelevant, the defendant must be resentenced. Of course, in circumstances where a sentence is being revised upward, findings and a statement of supporting reasons are important to demonstrate that improper considerations did not motivate the judge's action. See *McHoul* v. *Commonwealth,* 365 Mass. 465, 470-471 (1974); *North Carolina* v. *Pearce,* 395 U.S. 711, 726 (1969).

Other points argued by the defendant can be disposed of briefly. There is no double jeopardy question involved where, within a limited period, a judge revises a sentence pursuant to statutory authority which existed at the time of original sentencing. The right to seek a revocation and revision of sentence under G. L. c. 278, § 29C, is not limited to the defendant. The Commonwealth properly may seek a revision of sentence under that section, and the court may consider such a revision on its own motion.

4. The judgment of conviction is affirmed. The defendant's motion to revoke and revise the sentence of January 17, 1975, is allowed. The allowance of the Commonwealth's motion to revoke and revise the defendant's sentence of April 22, 1974, is vacated. The defendant's original sentence is thus reinstated. However, within sixty days of the date of the rescript from this court, the Commonwealth may request a further hearing on its motion to revoke and revise the defendant's original sentence.

*So ordered.*