COMMONWEALTH *vs.* WILLIAM SETTIPANE.

Suffolk.    September 14, 1977. — October 24, 1977.

Present: HALE, C.J., ARMSTRONG, & BROWN, JJ.

*Receiving Stolen Goods.    Evidence,* Circumstantial.    *Joint Enterprise. Practice, Criminal,* Sentence.

Evidence at the trial of indictments charging the defendant with receiving stolen property, even though circumstantial, was sufficient to warrant a finding that the defendant possessed the property, knowing it to be stolen. [651-653]

---

Commonwealth *v.* Settipane.

At a criminal trial, the judge did not abuse his discretion in consider- ing at sentencing information submitted in two affidavits of police and security officers purporting to show that the defendant had been engaged in other criminal activity for which he had not been in- dicted. [653-656] Brown, J., concurring.

INDICTMENTS found and returned in the Superior Court on June 19, 1975.

The cases were heard by *Nelson,* J.

*Jack I. Zalkind* (*Ellen Yankiver Suni* with him) for the defendant.

*Roger A. Emanuelson,* Special Assistant District Attor- ney, for the Commonwealth.

HALE, C.J.   The defendant was tried before a Superior Court judge sitting without a jury and found guilty under an indictment charging unlawful possession of 473 counter- feit motor vehicle operators' licenses and two indictments which charged receiving stolen property. He assigns as er- ror (1) the judge's denial of his "Motion for a Directed Verdict" after the close of the Commonwealth's case and (2) the judge's consideration at sentencing of information submitted in affidavits concerning alleged prior criminal conduct by the defendant for which he had been neither convicted nor indicted.

At trial John J. Crowley of the Boston police, attached to the organized crime unit of the Suffolk County district attorney's office, testified that in May of 1975 he partici- pated in the investigation of the manufacture of counterfeit Massachusetts drivers' licenses which were being used as identification by passers of counterfeit checks. During that month Detective Crowley was looking for stolen Polaroid I.D. cameras which were used to make the licenses. On the morning of May 29, 1975, he set up a surveillance of the area in the rear of a motel in Revere. He positioned himself so that he had a clear view of rooms 214 and 215. At ap- proximately 2:15 P.M. Detective Crowley observed a sta- tion wagon drive into the rear parking lot of the motel and back up to a staircase which led to rooms 214 and 215. Three men got out of the car. The driver opened the rear

of the car, and the other two men went up the stairs towards rooms 214 and 215. About a minute later these same two men came down the stairs carrying a suitcase and clothing which they put in the rear of the car. They then made a second trip up the stairs, accompanied this time by the driver, and about two minutes later came down carrying bags, suitcases, and two articles measuring about two feet on each side, wrapped in green plastic bags. Those items were also placed in the rear of the station wagon. At this point Detective Crowley recognized one of the men from previous investigations and police photographs to be the defendant.

Detective Crowley further testified that after the car had been loaded, the three men entered it and drove out of the parking lot at a high rate of speed. A short time later Crowley and another officer approached the car at a gasoline station where it had stopped. Detective Crowley saw through side windows of the station wagon that one of the square articles had been partially exposed due to a tear in the plastic bag. He observed a plate on the article, which bore the name "Polaroid I.D.-2." He recognized it to be a cutter section of a camera used in the making of Massachusetts licenses.

At that time the defendant and his two companions were arrested, the automobile was secured, and a search warrant was obtained to search the car and rooms 214 and 215 of the motel. As a result of a search of the motel rooms (pursuant to the warrant) the police discovered a paper cutter, a box of bonded check paper, some remnants of cut check paper and a plastic laminating material used in the Polaroid camera. In the station wagon the police found a Polaroid Land I.D.-2 camera which they knew to have been stolen; 473 blank counterfeit Massachusetts drivers' license forms; three validating stamps which had been stolen from the Registry of Motor Vehicles; eighty-seven series E savings bonds, which had been stolen November 20, 1974; several blank Oregon and Alabama drivers' license forms; an American Telephone common stock certificate; blank Social Security and firearm identification cards; several hundred

Commonwealth *v.* Settipane.

checks, later determined to have been stolen from the United States mails; and several negative copies of checks used in the reproduction of such checks by a photo offset process.

1. The defendant first argues that the judge should have granted his motion for a finding of not guilty as there was insufficient evidence from which the judge could have found that the defendant knowingly possessed the property or that he knew or believed the property in question to be stolen. We disagree. Viewing the evidence in the light most favorable to the Commonwealth, as we must, *Commonwealth* v. *Flynn,* 362 Mass. 455, 479 (1972); *Commonwealth* v. *Perry,* 3 Mass. App. Ct. 308, 312 (1975), we hold that the denial of the motion was proper.

The elements of proof essential to convict a defendant of receiving stolen property (G. L. c. 266, § 60) are that (1) one must buy, receive or aid in the concealment of property which has been stolen or embezzled, (2) knowing it to have been stolen. *Commonwealth* v. *Donahue,* 369 Mass. 943, 949 (1976), cert. denied, 429 U. S. 833 (1976).

The absence of direct evidence that the defendant knew that the property in the station wagon and in the motel rooms had been stolen did not require the judge to order a finding of not guilty. "When knowledge is an essential element of an offense, it can be proved by circumstantial evidence." *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 613 (1976). It is possible to establish guilt beyond a reasonable doubt "even though the inferences from the facts established are not unescapable or necessary . . . ." *Commonwealth* v. *Obshatkin,* 2 Mass. App. Ct. 1, 2 (1974), quoting *Commonwealth* v. *Alba,* 271 Mass. 333, 337 (1930). "Although there was no direct testimony that the defendant had knowledge that the property was stolen, it was nevertheless a question of fact for the [judge] to decide upon all the evidence, including the defendant's possession of the stolen property and the inferences to be drawn from this circumstance, whether the defendant received the goods, knowing them to be stolen." *Commonwealth* v. *Peopcik,* 251 Mass. 369, 371 (1925).

The defendant's active participation in assisting and loading the stolen articles into the vehicle supports a finding that he "possessed" the stolen goods. Whether or not the defendant personally held and transported each item of stolen property is immaterial where, as here, there was sufficient evidence from which the judge could conclude that the defendant and the two other men were engaged in a joint enterprise. *Commonwealth* v. *Stasiun,* 349 Mass. 38, 49 (1965). *Commonwealth* v. *Benders,* 361 Mass. 704, 707-708 (1972). *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 789 (1975). *Commonwealth* v. *Drew,* 4 Mass. App. Ct. 30, 32-33 (1976). *Commonwealth* v. *Gallagher,* 4 Mass. App. Ct. 661, 662-663 (1976).

In this case the defendant and two companions arrived at a motel room which the police, who were looking for stolen Polaroid cameras, had under surveillance. The men went directly to rooms 214 and 215 and carried down clothes, suitcases, and, wrapped in green plastic bags, two bulky articles which were the same size as the cameras for which the police were looking. The defendant claims that since the suitcases were closed and the cameras wrapped, it cannot be shown that he knew that the suitcases contained stolen property. However, it could properly have been inferred that while he was in the motel room, the defendant observed the blank check paper, paper cutter, and other materials which were later found there pursuant to the search warrant. It is undisputed that those articles as well as the hundreds of checks and blank license forms and the eighty-seven savings bonds all found in the suitcases in the station wagon had been recently stolen.[1] It was permissible for the judge to infer, as he did, from the defendant's possession of the recently stolen goods, that he knew or believed the goods to be stolen. *Commonwealth* v. *Wilbur,* 353 Mass. 376, 384 (1967), cert. denied, 390 U. S. 1010 (1968). *Commonwealth* v. *Ryan,* 355 Mass. 768, 773

---

[1] The judge found the defendant not guilty of receiving the stolen Polaroid camera, which the evidence showed had been stolen two years before the defendant's arrest.

(1969). *Commonwealth* v. *Smith,* 3 Mass. App. Ct. 144, 146 (1975). *Commonwealth* v. *Obshatkin,* 2 Mass. App. Ct. at 3. We hold that there was ample evidence presented from which the existence of the essential elements of the crime charged could be inferred, particularly that the defendant "knew or believed [the] property was stolen property at the time it came into his possession, or at the time while it was in his possession he ascertained that it was stolen property . . . ." *Commonwealth* v. *Sandler,* 368 Mass. 729, 740-741 (1975).

2. The defendant's second contention is that the judge erred in sentencing him by considering two affidavits of police and security officers purporting to show that the defendant had been engaged in other criminal activity for which he had not been indicted. The defendant further argues that even if the use of the affidavits was otherwise proper, the information contained in them was not reliable, and thus it was error for the judge to have considered it. There was no error.

Unlike the trial itself where strict rules determine what evidence may be considered by the fact finder, "[a]fter the conviction of a defendant, a judge may consider many factors which would not be admissible as evidence in the trial of a case. The judge may consider hearsay, the defendant's behavior, family life, employment, and various other factors." *Commonwealth* v. *Celeste,* 358 Mass. 307, 309-310 (1970).

The Supreme Judicial Court has recently set some limits on the information which a judge may consider in determining a sentence. In *Commonwealth* v. *Franks,* 372 Mass. 866 (1977) (decided after the trial in this case), the court held that in sentencing a defendant the judge may take into account pending indictments against the defendant as long as the judge makes clear that "he did not pass on guilt or innocence on the untried charges . . . [that t]he resulting sentence is within statutory limits, and [that] there is no basis in the record for apprehension of 'vindictiveness' or 'retaliatory motivation' in violation of the principles laid down in *North Carolina* v. *Pearce,* 395 U. S. 711, 723-726

(1969)." Neither may a sentence rest on information which is "inaccurate or misleading ... allegations of other criminal conduct which were wholly unreliable ... [or] any conduct other than that for which the defendant stands convicted in the particular case." *Commonwealth* v. *LeBlanc*, 370 Mass. 217, 221 (1976). In *LeBlanc* the court also said that, although the existence of pending criminal charges may be disclosed to the sentencing judge and considered by him, "[f]airness suggests that a sentencing judge should not permit the sentence to vary because of his belief that the defendant is guilty of unrelated, pending criminal charges." *Id.* at 223.[2] See also *Commonwealth* v. *Murray*, 4 Mass. App. Ct. 493, 495-499 (1976); *Commonwealth* v. *Sitko*, 372 Mass. 305, 313-314 (1977).

In the case before us the judge made clear that he was influenced in sentencing the defendant by the evidence submitted to him in the affidavits of the officers. This procedure was permissible so long as the judge was merely using the information to get the fullest possible picture of the defendant and his involvement in the offenses charged and was not imposing punishment for any crimes which may have been alleged in the affidavits. We have reviewed the affidavits and the judge's remarks concerning the affidavits, which appear in the transcript of the sentencing proceeding. We note that there is no accusation in either affidavit that the defendant had committed any particular crime. We further note that the judge used the information in the affidavits to inform himself about the "characteristics of the offense as well as [the] characteristics of the offender." He saw that the allegations in the affidavits were "consistent with the concrete evidence ... before [him], materials stolen, and concrete evidence that was before [him] in terms of the record of conviction." He used the

---

[2] The defendant has asked us to find a legal distinction between the situation presented in this case, where the affidavits contained allegations of criminal activity, and that presented in *LeBlanc* and *Franks* where the judge was concerned with pending charges for which the defendant had been indicted. This distinction is not made in decided cases. See *Commonwealth* v. *LeBlanc, supra* at 220-221, and cases cited.

Commonwealth *v.* Settipane.

affidavits, together with all the other material before him, to determine an appropriate sentence.

There was substantial evidence before the judge for him to use in sentencing. He had the testimony of Detective Crowley, evidence of the large amount of contraband seized in the search of the motel rooms and the automobile and the statements of the defendant and a codefendant given in their examination on their offers to plead guilty to charges of conspiracy to utter forged instruments and of conspiracy to steal. These examinations took place after the findings of guilty on the charges now on appeal and informed the judge more fully of the scope of the operation in which the defendant was involved. In addition, the defendant's past criminal record was also before the judge, who noted that the defendant had "served time" and had "a substantial record that includes larceny in the past, includes forging instruments in the past . . . ." "[A] judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States* v. *Tucker,* 404 U. S. 443, 446 (1972). It is of the utmost importance that a judge possess great latitude in disposition so that he will arrive at the most appropriate sentence taking into account "the fullest information possible concerning the defendant's life and characteristics." *Williams* v. *New York,* 337 U. S. 241, 247 (1949).[3]

The defendant's second argument concerning the affidavits is that the information they contained was unreliable. We regard this argument to be without merit. The defendant has not pointed to any way in which the affidavits are inaccurate, nor did he take advantage of his opportunity in court to rebut the information or to contest its accuracy. This does not, as the defendant suggests, place an inequitable burden on him. In a sentencing proceeding the Commonwealth and the defendant have equal opportunity to

---

[3] The defendant has understandably made no suggestion that the judge acted "vindictively" or with a "retaliatory motivation" in imposing sentence.

Commonwealth *v.* Settipane.

present information to the sentencing judge. Both sides in this case availed themselves of that opportunity. If the defendant heard allegations by the Commonwealth which he considered false, we would expect that he would have tried to rebut them. The burden is on the appellant to show the unreliability of the affidavits. See *Commonwealth* v. *Rivers,* 307 Mass. 225, 227 (1940); *Commonwealth* v. *Bottiglio,* 357 Mass. 593, 597 (1970); *Commonwealth* v. *Fiore,* 364 Mass. 819, 827 (1974). The defendant has failed to do so.

We hold that there was no abuse of discretion or error of law in the sentencing process used in this case.

*Judgments affirmed.*

BROWN, J. (concurring).     If there was error in the admission of the affidavits (see *Commonwealth* v. *Franks, supra,* and *Commonwealth* v. *LeBlanc, supra*), it was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U. S. 18 (1967). The magnitude of the defendant's alleged criminal activity was perfectly obvious from the evidence properly admitted at trial. Moreover, as the majority points out quite clearly, the defendant made no effort to rebut or contest the information contained in the affidavits.

And there is nothing in the record which even vaguely suggests that the judge acted vindictively or with a retaliatory motivation in imposing sentence, I agree that the judgments should be affirmed, albeit without enthusiasm.