Following a jury-waived trial, the defendant, Agapito Rivera, who had been charged with possession of a class B controlled substance with intent to distribute, was convicted of the lesser included offense of possession of a class B controlled substance (cocaine). He appeals from that conviction and the denial of his motion for new trial.
Background. Before trial, the defendant moved to suppress certain evidence. The motion was denied. During trial, on the basis of certain trial testimony that the defendant argued was in conflict with the evidence presented at the suppression hearing, the defendant moved to renew the suppression motion, pursuant to Mass.R.Crim.P. 13(a)(5), as appearing in 442 Mass. 1516 (2004). The trial judge referred the motion to renew to the motion judge; the motion was denied. After trial, the defendant moved for a new trial, which motion was denied. On appeal the defendant argues that his motion to suppress and his motion to renew should have been allowed, that certain errors occurred at trial, and that his motion for new trial should have been granted. We affirm.
Facts from hearing on motion to suppress. We summarize the facts found by the motion judge after the evidentiary hearing on the defendant's motion to suppress and supplement these findings with uncontested evidence from the hearing.
On July 18, 2011, at approximately 7:00 P.M. , Officer Richard Fucci of the Lynn police department was conducting surveillance in the area of Western Avenue and Ida Street, known as a high crime area where many drug offenses and crimes of violence had taken place. Fucci testified that he had made numerous drug arrests in this area and that the Prime Gas Station is a common place for drug transactions.
Fucci observed a red Dodge motor vehicle back into a parking space at the gas station. The driver of the Dodge, later identified as the defendant, did not exit the vehicle; instead, he appeared to be looking around while in the vehicle. The defendant then drove out of the parking lot, traveled about 100 feet, and parked in front of 19 Camden Street where he continued to look around.
Fucci called for backup and was joined on the scene by Officer Michael Kelter.[2] The officers observed the defendant make a brief telephone call; then they saw a green Ford vehicle travel down Camden Street and stop across from the defendant's Dodge. The defendant then exited the Dodge and got into the Ford through the front passenger door.
After running the Ford's license plate, Fucci drove up alongside the vehicle with the nose of his unmarked cruiser facing toward the nose of the Ford; Kelter pulled in behind the Ford. The officers did not activate their vehicles' lights or sirens. The Ford was not blocked in, and could have proceeded forward. Fucci then approached the driver while Kelter approached the defendant, who was still in the front passenger seat. As Fucci identified himself as "Lynn Police," he observed a large quantity of cash and an empty plastic bag on the center console of the vehicle. Fucci testified that Kelter told him he had seen the defendant "bend down under the passenger seat."
At that point, Kelter ordered the defendant out of the vehicle. The defendant complied, telling Kelter that he did not have anything on him and that the officer could check him. Kelter pat frisked the defendant, but found nothing of note. Kelter looked under the front passenger seat of the vehicle and found a large quantity of what appeared to be cocaine. Both the defendant and the driver of the Ford were taken into custody.
Discussion. 1. Motion to suppress. When reviewing the disposition of a motion to suppress, "[w]e accept the judge's subsidiary findings of fact absent clear error, but conduct an independent review of his ultimate findings and conclusions of law." Commonwealth v. Cabrera, 76 Mass. App. Ct. 341, 344 (2010) (quotation omitted).
a. The stop.[3] "Before considering whether the officers' actions in stopping the defendant were constitutionally permissible, we first identify the moment when the seizure occurred." Commonwealth v. Gomes, 453 Mass. 506, 510 (2009). "A person has been seized by a police officer 'if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " Commonwealth v. Lopez, 451 Mass. 608, 611 (2008), quoting from Commonwealth v. Borges, 395 Mass. 788, 791 (1985).
Contrary to the defendant's contention, he was not seized in the constitutional sense when the officers approached the Ford. The officers stood outside of the already-parked Ford; their respective vehicles did not block the Ford in. See Commonwealth v. DePeiza, 449 Mass. 367, 370-371 (2007) (no seizure where police stepped out of unmarked vehicle, approached defendant, engaged in short conversation, and accepted identification when voluntarily offered); Commonwealth v. Cabrera, 76 Mass. App. Ct. at 343-345 (no stop where officers, suspecting drug transaction was afoot, drove down alley, parked unmarked vehicle without blocking defendant's vehicle, conspicuously displayed badges, and approached defendant). Indeed, "[a]pproaching in an unmarked cruiser, leaving the cruiser, and requesting to speak with a citizen, without more, does not constitute a seizure." Commonwealth v. Rock, 429 Mass. 609, 612 (1999).
Furthermore, prior to the exit order, the officers neither ordered the defendant to stop nor displayed any indicia of authority to signal that he was not free to leave. Fucci's act of identifying himself as a police officer was not, as the defendant claims, a show of authority that turned the encounter into a seizure. See Commonwealth v. Damelio, 83 Mass. App. Ct. 32, 36 (2012). Given the circumstances, "a reasonable person in the defendant's situation would have felt free to leave during that initial part of the encounter"; the defendant was not seized in the constitutional sense until the officer asked him to exit the vehicle. Commonwealth v. DePeiza, 449 Mass. at 370.
We next consider whether the seizure of the defendant at the time of the exit order was based on "specific, articulable facts and reasonable inferences therefrom," that the defendant "was committing, or was about to commit a crime." Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). Officers Fucci and Kelter had observed two motor vehicles meet at a location known for drug transactions. Fucci noted that the defendant remained in his vehicle and appeared to be looking around. Adding to the officers' suspicion that a drug deal was afoot was the large quantity of cash and empty plastic bag on the center console of the vehicle, coupled with the defendant's downward movement when he appeared to be reaching under his seat.
From the officers' perspective, it was reasonable to suspect that an illegal drug transaction was underway. See Commonwealth v. Santaliz, 413 Mass. 238, 242 (1992) (in eyes of experienced narcotics investigator, whole "silent movie" disclosed "sequence of activity consistent with a drug sale"); Commonwealth v. Cabrera, 76 Mass. App. Ct. at 346 ("Viewed through the eyes of experienced police officers and as a whole, even seemingly innocent activities may take on a sinister cast and give rise to reasonable suspicion").
b. The exit order. "While a mere hunch is not enough, ... it does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns, and, if the basis is there, a court will uphold the order." Commonwealth v. Gonsalves, 429 Mass. 658, 664 (1999) (citation omitted). The standard is an objective one. See Commonwealth v. Torres, 433 Mass. 669, 673 (2001). The officers need not point to specific facts that an individual had a weapon. See Commonwealth v. Gonsalves, supra at 665.
Considering the totality of the evidence, the officers had a sufficient reasonable concern of danger to justify the exit order. It was dark out at the time of the encounter, and the officers were aware that they were in a high crime area. Critically, the defendant's movements of bending over out-of-view and seemingly reaching underneath his seat suggested that he was moving some unknown object. Such movements are sufficient to raise rational safety concerns. See Commonwealth v. Stampley, 437 Mass. 323, 327 (2002), and cases cited.
c. The patfrisk and search. The defendant next argues that the patfrisk and search of the vehicle were unlawful. The analysis whether a patfrisk is proper is the same as that used to determine whether the exit order is valid, that is, "whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." Commonwealth v. Torres, 433 Mass. at 675-676 (quotation omitted). A protective search may extend to the interior of an automobile as long as it is limited to what is minimally necessary to dispel safety concerns. See Commonwealth v. Silva, 366 Mass. 402, 408 (1974) ; Commonwealth v. Almeida, 373 Mass. 266, 272 (1977). Here, the same factors justifying the exit order and patfrisk of the defendant also supported the search of the automobile, including underneath his seat where the cocaine was found. The motion judge properly denied the motion to suppress.
2. Motion to renew motion to suppress. The defendant also argues that the motion judge erred in denying his motion to renew his suppression motion, on the basis that Kelter's trial testimony was materially different from Fucci's testimony at the suppression hearing about Kelter's observations. A denial of a motion to renew is reviewed for abuse of discretion. See Commonwealth v. Lahey, 80 Mass. App. Ct. 606, 615 (2011). We conclude that the judge did not abuse his discretion in denying the motion.
At trial, Kelter testified that he "observed [the defendant] bend down, his head dipped down as Officer Fucci was approaching." At the motion hearing, Fucci had testified that "Kelter informed me that he observed [the defendant] bend down under the passenger seat." The defendant argued that the discrepancy between Fucci's testimony at the motion hearing and Kelter's testimony at trial was significant. Under either account, the movement created the reasonable inference that the defendant had reached under the seat. See Commonwealth v. Mercado, 422 Mass. 367, 369 (1996) ("To qualify as reasonable, the officer's suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom" [quotation omitted] ). Although the motion judge expressed skepticism that the motion to renew should have been referred back to him, he also observed that the additional evidence didn't "sound to [him] like it's a whole lot different from what [he] found."[4] Accordingly, no basis to disturb the ruling on the original motion existed, and the motion judge did not abuse his discretion in denying the motion to renew. See Commonwealth v. Lahey, 80 Mass. App. Ct. at 615.
3. Confirmatory chemist's testimony. The defendant next claims that the trial judge erred in allowing the admission of the testimony of a confirmatory chemist, Della Saunders, who based her testimony partly on the primary chemist's notes.[5] The defendant argues that the admission of the testimony constituted improper expert opinion and inadmissible hearsay.
Here, Saunders provided her independent opinion based on her review of the nontestifying chemist's test results; she did not merely reiterate her colleague's opinion. See Commonwealth v. Sanchez, 476 Mass. 725, 733 (2017). Moreover, "[e]xpert opinion testimony ... does not violate the right of confrontation because the witness is subject to cross-examination concerning his or her expert opinion and the reliability of the underlying facts and data." Commonwealth v. Greineder, 464 Mass. 580, 584, cert. denied, 571 U.S. 865 (2013). Such was the case here, and we therefore see no error in the judge's decision to admit Saunders's opinion testimony. See Commonwealth v. Santana, 477 Mass. 610, 623 (2017) (admission of expert testimony not in error where substitute medical examiner testified to her independent opinion and was available for cross-examination on foundation of that opinion).
In addition, the defendant's claim that Saunders attempted to impermissibly vouch for hearsay test results by identifying the primary chemist's initials similarly misses its mark. Saunders testified that she recognized her colleague's handwriting based on working with him and having seen his handwriting for seven years. This was permissible. See Commonwealth v. O'Connell, 438 Mass. 658, 667 (2003), quoting from Commonwealth v. Ryan, 355 Mass. 768, 770-771 (1969) ("A witness who is familiar with a person's handwriting may give an opinion as to whether the specimen in question was written by that person").[6]
4. Sufficiency of the evidence.[7] The defendant argues that the trial judge erred in denying his motion for a required finding of not guilty because the evidence was insufficient to prove constructive possession of the cocaine.
The Commonwealth's evidence was more than adequate, under the familiar standard of Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), to justify the trial judge's denial of the defendant's motion for a required finding of not guilty. Here the Commonwealth was required to prove that the defendant had constructive possession of the drugs. In order to do so, there must be evidence that the defendant "[had] (a) knowledge of the contraband; (b) ability to control it; and (c) intention to exercise control over it." Commonwealth v. Crapps, 84 Mass. App. Ct. 442, 444 (2013). The requisite knowledge can be established through circumstantial evidence. See Commonwealth v. Garcia, 409 Mass. 675, 686 (1991). While presence in a vehicle is not sufficient to prove constructive possession, presence with "[a]dditional incriminating evidence" can be sufficient. Commonwealth v. Crapps, supra.
Viewing the evidence in the light most favorable to the Commonwealth and drawing all inferences in favor of the Commonwealth, there was sufficient evidence to find that the defendant constructively possessed the cocaine found under his seat. See ibid. (sufficient evidence of possession where "police had observed suspected drug dealing behavior").
The defendant's downward motion under his seat, where the drugs were ultimately located, was strong evidence of possession. This created a reasonable inference that the defendant, in an effort to conceal the cocaine, placed it under his seat once he realized the officers were approaching. See Commonwealth v. Sadberry, 44 Mass. App. Ct. 934, 936 (1998) (sufficient evidence of possession where contraband was found under driver's seat and passenger made motion indicating concealment as officers approached). See also Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 593 (2007) (sufficient evidence of possession where contraband was found under front passenger seat where defendant had been shoving feet).
Supplementing this evidence were the large quantity of cash and empty plastic bag on the center console. See Commonwealth v. Gonzalez, 452 Mass. 142, 148 (2008) (unusually large amounts of cash found in defendants' possession supported finding of constructive possession of drugs); Crapps, 84 Mass. App. Ct. at 445 (same).[8]
Judgment affirmed.
Order denying motion for new trial affirmed.

Kelter did not testify at the suppression hearing.

At the point in which the officers approached the defendant, there may have been reasonable suspicion to support a threshold inquiry, as the motion judge found; however, we need not reach that issue as there was no "stop" in the constitutional sense (and thereby no prospective constitutional violation) until the exit order. "We may affirm the denial of a motion to suppress on any ground supported by the record ...." Commonwealth v. Washington, 449 Mass. 476, 483 (2007).

The defendant also argues that the trial judge erred in referring the motion to the original motion judge, rather than hearing the motion himself. While he takes issue with the trial judge's reasoning for declining to hear the motion, he cites no authority for the proposition that the trial judge was required to hear the motion himself. It was a matter within the judge's discretion. See Kuwaiti Danish Computer Co. v. Digital Equipment Corp, 438 Mass. 459, 465-466 (2003) ("Although a judge should not lightly undo the work of another judge, the power to reconsider an issue remains in the court until final judgment" [citation omitted] ); Mass.R.Crim.P. 13(a)(5) (judge may permit pretrial motion which has been heard and denied to be renewed). As the trial judge noted, he had heard Kelter's testimony in a trial posture. Since the motion judge had heard Fucci's testimony in a motion to suppress posture, the trial judge reasonably concluded that the motion judge was in the best position to determine whether Kelter's testimony would have made any difference. There was no abuse of discretion.

The primary chemist, Daniel Renczkowski, was unavailable for trial.

The fact that the drugs were tested at the Hinton Laboratory is not significant, because the individual convicted of misconduct at that laboratory had no role in testing these drugs. See Commonwealth v. Resende, 475 Mass. 1, 13-14 (2016).

At trial Officer Fucci, Officer Kelter, and the chemist, Della Saunders, testified for the Commonwealth.

The defendant's motion for new trial raises arguments that have already been discussed; therefore we need not address them further. Additionally, the defendant complains that the judge neglected to issue findings on the motion for new trial, although he had stated that he would. The defendant fails to demonstrate how that omission negatively impacted him, and we do not consider it.